**CALIFORNIA NATIONAL GUARD, and Department of Defense, Petitioners/Cross-Respondents,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent/Cross-Petitioner.**

**Nos. 81–7231 and 81–7336.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1982.

Decided Jan. 27, 1983.

Sandra Wien Simon, Dept. of Justice, Washington, D.C., for petitioners/cross-respondents.

Mary Elizabeth Medaglia, Ellen Stern, F.L.R.A. Washington, D.C., for respondent/cross-petitioner.

Before CHOY, SNEED and SCHROEDER, Circuit Judges.

CHOY, Circuit Judge:

On February 20, 1981, the Federal Labor Relations Authority (Authority) ruled that, under the Labor-Management Relations Chapter of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, § 701, 92 Stat. 1111, 1191–1216 (codified at 5 U.S.C. §§ 7101–7135 (Supp. IV 1980)) (Labor-Management Act), the National Guard must bargain over the union proposal permitting grievance processing, including binding arbitration, of certain personnel matters related to the National Guard technicians. *National Association of Government Employees, Local R12–132 and California National Guard,* Case No. O–NG–149, 5 F.L.R.A. No. 25. The California National Guard (Guard), joined by the Department of Defense, petitions this court for a review of the Authority's decision, contending that the decision contravenes the National Guard Technicians Act of 1968, Pub.L. No. 90–486, 82 Stat. 755 (codified at 32 U.S.C. § 709 (1976)) (Technicians Act), which vests in the adjutant general of each state's National Guard the final administrative power over the matters covered in the union proposal. The same issue was raised by the New Jersey Air National Guard in its petition before the Third Circuit, which granted New Jersey Air National Guard's petition and reversed the Authority's decision. *New Jersey Air National Guard v. FLRA,* 677 F.2d 276 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982). The issue in this petition is whether the Technicians Act or the Labor-Management

Act should control the resolution of adverse personnel actions against the Guard technicians. Because we substantially agree with the Third Circuit's treatment of the issue, we grant the Guard's petition and reverse the Authority's decision.

## I. Background

During contract negotiations between the Guard and the National Association of Government Employees, Local R12–132, the Guard technicians' union (Union), a dispute arose concerning the negotiability of the following grievance procedure proposed by the union:

### Union Proposal
### ARTICLE XXIII

### NEGOTIATED GRIEVANCE PROCEDURE

. . . .

*Section 1.* This article establishes the exclusive procedure available to the employees in the unit, the Union and the Employer for resolving all grievances which fall within its scope. Grievances to be processed under this article shall apply to matters of concern or dissatisfaction regarding the interpretation, application or violation of law, regulations, or this agreement; conditions of employment; or relationships with agency supervisors and officials, including prohibited personnel practice charges and disciplinary and adverse actions. . . .

. . . .

*Section 2.* Where a matter may be raised under an applicable appellate procedure and this negotiated grievance procedure the employee at his discretion may raise the matter under the appellate procedure or this negotiated grievance procedure, but not both.

When the Guard asserted that the Union proposal concerned non-negotiable matters, the Union appealed to the Authority.

The Guard noted to the Authority that, under the Labor-Management Act, the Union's proposal would result in binding arbitration on grievances regarding the technicians' employment. Thus, the Guard contended that it should not be required to bargain over the Union's proposal since the proposal contravenes the Technicians Act, which specifically states that the technicians' right of appeal "shall not extend beyond the adjutant general of the jurisdiction concerned." 32 U.S.C. § 709(e)(5). The Union countered by arguing that § 709(e)(5) merely constitutes an alternative to the negotiated grievance procedure electable by the technicians under the Labor-Management Act. The Authority agreed with the Union and ordered the Guard to bargain. The Guard petitions for a review of the Authority's decision, and the Authority cross-petitions for enforcement of its order. *Amici curiae* briefs were filed with this court on behalf of the Commonwealth of Pennsylvania, Pennsylvania National Guard, and the Adjutants General Association of the United States. We have jurisdiction under 5 U.S.C. § 7123(a), (b) (Supp. IV 1980).

## II. Statutes

The Labor-Management Act is a comprehensive legislative scheme regulating the organizational rights of federal employees. It establishes the Authority as an independent entity in the Executive Branch to administer the statute and provide leadership in establishing policies and guidance relating to federal-service labor-management relations. 5 U.S.C. § 7105(a)(1).

Consistent with the finding of Congress that "labor organizations and collective bargaining in the civil service are in the public interest," 5 U.S.C. § 7101(a), the Labor-Management Act requires an agency to accord exclusive recognition to a union selected as the representative by a majority of employees in an appropriate unit as determined by the Authority. 5 U.S.C. § 7111(a). Thereupon, the agency and union have a duty to meet and negotiate in good faith for the purpose of arriving at a collective bargaining agreement. 5 U.S.C. § 7114(a)(4). The duty to bargain does not compel either party to agree to a proposal. 5 U.S.C. § 7103(a)(12). In addition, the

duty to bargain does not cover those matters over which an agency retains decision-making authority, e.g., reductions in grade, suspensions, removals, and other disciplinary actions. 5 U.S.C. § 7106(a). However, 5 U.S.C. § 7106(b)(2) permits an agency and a labor organization to negotiate the procedures that an agency will observe in exercising the decision-making authority. Furthermore, the scope of the duty to bargain extends to conditions of employment, i.e., personnel policies, practices and matters affecting working conditions of unit employees, unless the matters proposed for bargaining are inconsistent with federal law or government-wide rules or regulations, or with agency regulations deemed by the Authority to fill a "compelling need." 5 U.S.C. §§ 7117(a)(1), 7114(b)(2), and 7103(a)(14).

When a labor organization wishes to subject a particular matter to collective bargaining, it submits a proposal to the appropriate agency. If the agency asserts that the union's proposal involves a matter not within the agency's duty to bargain and, accordingly, refuses to bargain with respect to the proposal, as did the Guard in the present petition, the union may appeal to the Authority. 5 U.S.C. § 7117(c)(1). The Authority must then decide whether the union's proposal is negotiable. If the Authority determines it is, the agency must either negotiate or seek judicial review. 5 U.S.C. § 7123(a).

In a separate section entitled "Grievance Procedures," the Labor-Management Act states that collective bargaining agreements shall provide procedures for the settlement of grievances that, unless otherwise agreed by the parties, must include a provision for *binding arbitration,* as the final step, to be invoked by either the exclusive representative or the agency. 5 U.S.C. § 7121(a), (b)(3)(C). Where grievances arise under other personnel systems applicable to employees, the section further provides that the employee may, in his discretion, raise them under the existing appellate procedures applicable to those matters, or under the negotiated procedure. 5 U.S.C. § 7121(e)(1). These two provisions under the "Grievance Procedures" section of the Labor-Management Act are cited by the Authority as the basis for ordering the Guard to bargain over the Union proposal.

The Technicians Act was enacted by Congress to perpetuate the major features of the then-existing employment of so-called "caretakers and clerks," to care for material, armament, and equipment of the Army and Air Force National Guard. For over sixty years, the state adjutants general have been empowered by federal law to employ the technicians to train and administer the National Guard and maintain its equipment, and to pay them with federal funds. National Defense Act, Ch. 134, § 90, 39 Stat. 166, 205–06 (1916). Nevertheless, prior to enactment of the Technicians Act in 1968, the technicians were not considered federal employees. *Maryland v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965). The Technicians Act granted federal employee status to these "technicians,"[1] but as a separate and distinct class of federal employees. Thus, the Technicians Act continued and formalized as statutory conditions of employment most of the existing features of the former program, including (1) the requirement that technicians (with a few limited exceptions) be military members of the National Guard, 32 U.S.C. § 709(b), and (2) the vesting of decisions regarding employment, administration and discipline in the adjutants general of the states. 32 U.S.C. § 709(c). More significant, the Technicians Act, in 32 U.S.C. § 709(e), states: *"Notwithstanding any other provision of law* and under regu-

---

1. The purpose of the Technicians Act was to bring technicians within the coverage of the Federal Tort Claims Act and federal employee retirement and fringe-benefit programs. To do this, it was necessary to declare them to be federal employees. The Act thus provided that technicians would be considered employees of the United States, 32 U.S.C. § 709(d), and therefore suits could be brought against the United States for tortious actions of a technician within the scope of his employment, just like any other federal employee. 28 U.S.C. §§ 2671–2680.

lations prescribed by the Secretary concerned"—(1) a technician who is separated from the Guard, as a military member, or who fails to maintain the military grade specified for his position, "shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned;" (2) if a technician fails to meet the military security standards, he may be separated from his employment and discharged from the National Guard "by the adjutant general of the jurisdiction concerned;" (3) a technician may be separated from employment for cause "by the adjutant general of the jurisdiction concerned;" (4) a reduction in force, removal or adverse action "shall be accomplished by the adjutant general of the jurisdiction concerned;" and (5) a right of appeal with respect to (1)–(4) above *"shall not extend beyond the adjutant general of the jurisdiction concerned."* 32 U.S.C. § 709(e) (emphasis added).

### III. *Discussion*

Having examined the statutes involved, we now address the precise issue raised by this petition: whether the Guard under the Labor-Management Act has a duty to bargain in good faith over a proposed grievance procedure, culminating in binding arbitration, when the Technicians Act provides that appeals of adverse personnel actions shall not extend beyond the state adjutants general. In resolving the issue before us, we are mindful that "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

The Authority asserts that a harmonious co-existence of the two statutes is possible if, as it found, § 709(e) merely embodies an alternative procedure for grievance appeals, along with the negotiated grievance procedure, that may be invoked at the option of the technicians. The Authority argues that

its interpretation must be upheld as having been rationally based on the Labor-Management Act. which states:

Similar matters [to those adverse-action matters covered under §§ 4303 and 7512 of title 5] which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both.

5 U.S.C. § 7121(e)(1) (Supp. IV 1980).

■ Under the Labor-Management Act, the Authority has the responsibility to construe the statute and determine whether a proposal in a given case comes within the duty to bargain. 5 U.S.C. §§ 7105(a)(2)(E), 7117. The Authority determined that the Labor-Management Act permits both the existing statutory appeals procedure and the negotiated grievance procedure as alternatives available to the federal employees. We respect this particular determination by the Authority as having been rationally based. *See, e.g., Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979) (if agency's "construction of the statute is reasonably defensible, it should not be rejected merely because the courts might prefer another view of the statute"); *Department of Defense, Army-Air Force Exchange Service v. FLRA,* 659 F.2d 1140, 1161 (D.C.Cir.1981) ("courts must yield great deference to an interpretation of a statute by the agency entrusted with its administration"), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). However, we disapprove of the Authority's attempt to then conciliate the two statutes involved in this petition by concluding that the Technicians Act, in § 709(e), also offers a mere alternative to the negotiated grievance procedure available to the technicians. The Authority's latter conclusion rests on its finding that nothing contained in the Technicians Act precludes the Guard "from fulfilling its obligation *under the* [Labor-Management Act] to negotiate a separate contractual grievance procedure culminating in binding arbitration under which ad-

verse actions involving bargaining unit employees could be processed at the option of the employee." *National Association of Government Employees, Local R12–132 and California National Guard,* 5 F.L.R.A. No. 25, slip op. at 7 (Feb. 20, 1981).

The Authority has construed provisions not only of its own organic statute but also of the Technicians Act. Judicial deference need not attach to the Authority's interpretation of the Technicians Act, since the agencies with primary responsibility for administering and interpreting that particular act are, arguably, the Department of Defense and National Guard Bureau. *See Whaley v. Schweiker,* 663 F.2d 871, 873 (9th Cir.1981) (no judicial deference need be given to the Secretary of Health and Human Services' interpretation of another agency's [Veterans Administration] statutes and regulations); *Tsosie v. Califano,* 651 F.2d 719, 722 (10th Cir.1981) (the Secretary of Health, Education and Welfare's construction of regulations "is not entitled to special deference to the extent that it rests on the interpretation of another agency's statutes and regulations").

In any event, the Authority's finding that the Technicians Act provision of § 709(e) was not meant to be exclusive is contradicted by the section's explicit language that "[n]otwithstanding any other provision of law and under regulations prescribed by the Secretary concerned" a right of appeal with respect to the enumerated matters therein "shall not extend beyond the adjutant general of the jurisdiction concerned." This language clearly forbids, on its face, applicability of any other provision that may contradict the terms of the provision in the absence of any subsequent federal statute that might modify or supersede the provision in some way. As the Third Circuit concluded, the language in § 709(e) imposes a *limit* on procedures: "[I]t establishes only that a dispute over one of the enumerated matters, whatever procedural route it may take, must terminate, finally, with the decision of the adjutant general." *New Jersey Air National Guard v. FLRA,* 677 F.2d at 282. Thus, a binding arbitration that may reject the adjutant general's final determination would, for all practical purposes, negate the express language of the Technicians Act.

The Authority's attempt to harmonize the two statutes, in short, is unmeritorious for the simple reason that it would tend to render the existence of part of the Technicians Act meaningless. We feel that a better conciliation of the statutes is that the provisions of the Technicians Act constitute a narrow exception to the broad legislative scheme set forth in the Labor-Management Act. Specifically, Congress plainly intended to leave with state adjutants general the final authority over adverse personnel actions against National Guard technicians. Our decision is primarily based on a careful reading of the statutes themselves. A negotiated grievance procedure culminating in binding arbitration, which must be provided for in any collective bargaining agreement under the Labor-Management Act, 5 U.S.C. § 7121(a)(1), would defy the express wording of the Technicians Act, 32 U.S.C. § 709(e). Thus, the Union proposal calling for such a negotiated grievance procedure is not subject to bargaining, since the Labor-Management Act itself provides that an agency's duty to bargain in good faith exists "to the extent not inconsistent with any Federal law." 5 U.S.C. § 7117(a)(1). We feel that this particular provision in the Labor-Management Act was designed specifically for situations where, as here, the sweeping legislative scheme may come in conflict with other federal statutes. While our decision is based on the plain reading of the statutes, we may also note that the same result was reached by the Third Circuit in exploring the legislative history and purpose underlying the two statutes.[2] *New*

2. We defer the bulk of discussion in this regard to the well-written Third Circuit opinion in the *New Jersey Air National Guard* case. However, one excerpt from the opinion is particularly worth noting here:

[S]ection 709(e), which ensures, the authority of the state adjutants general, can be viewed as a virtual *quid pro quo* for the section 709(d) grant of federal employee status [for the technicians]. . . .

*Jersey Air National Guard v. FLRA*, 677 F.2d at 282–86.

We, therefore, grant the Guard's petition for review, deny the Authority's petition for cross-enforcement, and set aside the Authority's decision.

\* \* \* \* \* \*

[I]t appears quite clear from the importance Congress attached to the preservation of state control that, at least in 1968, it intended to bring Guard technicians within the coverage of schemes such as the Labor-Management Act only with the provision that the state controls set out in section 709(e) would remain.

677 F.2d at 284.