**STATE OF NEBRASKA, MILITARY DEPARTMENT, OFFICE OF THE ADJUTANT GENERAL and Department of Defense, Petitioners,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 82–1347.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1982.

Decided Feb. 8, 1983.

J. Paul McGrath, Asst. Atty. Gen., William Kanter, Sandra Wien Simon, Attys.,

* Hon. William J. Jameson of the District of Montana, sitting by designation.

Appellate Staff Civ. Div., Dept. of Justice, Washington, D.C., for petitioners.

James R. Rosa, Gen. Counsel, Mitchell J. Notis, Staff Counsel, American Federation of Government Employees, AFL–CIO Washington, D.C., for amicus curiae American Federation of Government Employees, AFL–CIO.

Elizabeth Medaglia, Associate Sol., William R. Tobey, Atty., Federal Labor Relations Authority, Washington, D.C., for respondent.

Before HEANEY and JOHN R. GIBSON, Circuit Judges, and DUMBAULD,* Senior District Judge.

HEANEY, Circuit Judge.

The Military Department of the State of Nebraska [National Guard] and the United States Department of Defense seek to set aside the decision of the Federal Labor Relations Authority [FLRA][1] requiring the National Guard to bargain over certain union proposals for a grievance procedure culminating in binding arbitration. The FLRA cross-petitions for enforcement of that decision. Because the National Guard Technicians Act of 1968, 32 U.S.C. § 709(e) (1976), carves out a specific set of adverse personnel actions against Guard technicians appealable to the state adjutants general, to the exclusion of final review by labor arbitrators, we set aside the decision of the FLRA insofar as it conflicts with that statute.

## I. BACKGROUND

The factual and procedural history underlying this appeal is undisputed. During contract negotiations between the union representing a unit of National Guard technicians[2] in Nebraska, the American Federation of Government Employees [AFGE], AFL–CIO, Local 2953, and the Nebraska National Guard, the union made several proposals concerning grievance and arbitration procedures under which the technicians could contest adverse personnel actions.[3] The Guard alleged that these proposals were nonnegotiable insofar as they provided for binding arbitration of disputes over certain personnel actions. The union appealed to the FLRA for a determination regarding the negotiability of these proposals. 5 U.S.C. §§ 7105(a)(2)(E) & 7117(c) (Supp. IV 1980).

Before the FLRA, the Guard repeated its allegation of nonnegotiability based on language in the National Guard Technicians Act of 1968 which states "[n]otwithstanding any other provision of law," appeals of specific adverse personnel actions against Guard technicians "shall not extend beyond the adjutant general of the jurisdiction concerned."[4] 32 U.S.C. §§ 709(e) & (e)(5)

---

* The Honorable EDWARD DUMBAULD, Senior District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. *American Federation of Government Employees, AFL–CIO, Local 2953,* and *State of Nebraska, Military Department, Office of the Adjutant General, Lincoln, Nebraska,* 7 F.L.R.A. No. 111 (1982).

2. Guard technicians are full-time civilian employees, often required to join the Guard incident to their employment, who perform various administrative, training, maintenance, and repair tasks. *See* 32 U.S.C. § 709(a) (1976); H.R. Rep. No. 1823, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 3318, 3319.

3. Union Proposal I, Article 8, Section 8–5, provides for notice and some type of hearing prior to disciplinary action against an employee. Subsection (d) of the proposal allows the union to invoke binding arbitration to review the action taken. Union Proposal II, Article 24, Section 24–3, defines "grievance" broadly, only making exception for the five items listed in Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7121(c) (Supp. IV 1980), which are not at issue in the present case. Union Proposal III, Article 24, Section 24–4, provides that an employee affected by "discrimination, a removal or reduction in grade or pay based on unacceptable performance or adverse action may at his/her option raise the matter under this negotiated grievance procedure. The union may invoke binding arbitration through the process presented in Article 25."

4. The issue of whether this language restricts judicial review of decisions by the state adjutants general is not before this Court. *See generally Tennessee v. Dunlap,* 426 U.S. 312, 312–313, 96 S.Ct. 2099, 2100, 48 L.Ed.2d 660 (1976) (Supreme Court reviewing due process

(1976). The FLRA held that the proposals were negotiable, even though they allowed for alternative grievance and arbitration procedures separate from review by the state adjutants general, at the option of the aggrieved technician. The FLRA based this holding on its earlier decision in *National Association of Government Employees, Local R12–132* and *California National Guard*, 5 F.L.R.A. No. 25 (1981) *rev'd sub nom., California National Guard and Department of Defense v. Federal Labor Relations Authority*, 697 F.2d 874 (9th Cir. 1983).[5]

The parties brought the present appeal for review of the FLRA's finding of negotiability. 5 U.S.C. §§ 7123(a) & (b) (Supp. IV 1980). The National Guard asserts that FLRA's decision in *California National Guard*, and thus the decision in the instant case, is erroneous. It contends that the duty to bargain over even alternative grievance and arbitration procedures, under the Labor-Management Relations Chapter of the Civil Service Reform Act of 1978, 5 U.S.C. § 7121 (Supp. IV 1980), conflicts with the National Guard Technicians Act to the extent that the proposed procedures allow binding arbitration of matters reserved for final determination by the state adjutants general in the technicians statute. The Guard argues that we should resolve this conflict in favor of the earlier, more specific technicians statute, as did the Third Circuit in *New Jersey Air National Guard v. Federal Labor Relations*

*Authority*, 677 F.2d 276 (3d Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982). The FLRA stands by its decisions in *California National Guard* and the present case, and urges that we not follow the lead of the *New Jersey Air National Guard* court.

## II.  DISCUSSION OF ISSUES

### A.  *Standard of Review.*

■ The FLRA asserts that we must enforce its decision as long as that decision is a reasonable interpretation of the Civil Service Reform Act. It relies in particular on *Department of Defense, Army-Air Force Exchange Service v. Federal Labor Relations Authority*, 659 F.2d 1140, 1161 (D.C. Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), for this assertion. We do not dispute this proposition as a general matter, since the specialization and experience of agencies can be used to provide necessary detail to otherwise broad-brushed legislation susceptible of many interpretations. The Civil Service Reform Act admits of such deference in providing that judicial review of FLRA orders "shall be on the record in accordance with section 706 of this title." 5 U.S.C. § 7123(c) (Supp. IV 1980). Section 706 of Title 5 provides, among other things, that agency action should be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

---

claim of discharged Air National Guard technician); *NeSmith v. Fulton*, 615 F.2d 196, 201–203 (5th Cir.1980) (some decisions of adjutants general involve military affairs not suitable for judicial review); *Chaudoin v. Atkinson*, 494 F.2d 1323, 1327–1328 n. 5 (3d Cir.1974) (language in § 709(e) restricts administrative, not judicial, appeals). Therefore, our discussion of the exclusivity of review by the adjutants general over matters listed in § 709(e) only applies to the FLRA's position that binding review by an arbitrator under a negotiated grievance procedure does not conflict with the adjutants' general authority under that section.

5. In *California National Guard*, the FLRA decided that the duty to bargain over grievance and arbitration procedures was not inconsistent with the National Guard Technicians Act. It held that Congress intended Title VII of the Civil Service Reform Act of 1978 [Labor-Management Relations Chapter], 5 U.S.C. §§ 7101–

7135 (Supp. IV 1980), to include National Guard technicians in its provisions for grievance and arbitration procedures. Specifically, it found that the Civil Service Reform Act provided for negotiated grievance and arbitration procedures as an alternative to statutory appellate procedures contemplated by legislation such as the National Guard Technicians Act. *See* 5 U.S.C. § 7121(e)(1) (Supp. IV 1980). The FLRA saw no conflict between these two acts, since the 1978 civil service reform legislation provided for alternative procedures for dispute resolution, not abrogation of the statutory appellate procedures contemplated by the earlier National Guard technicians statute. *National Association of Government Employees, Local R12–132* and *California National Guard*, 5 F.L.R.A. No. 25 at 6–7 (1981), *rev'd sub nom., California National Guard and Department of Defense v. Federal Labor Relations Authority*, 697 F.2d 874 (9th Cir.1983).

Administrative Procedure Act [APA], 5 U.S.C. § 706(2)(A) (1976).

We do not understand the FLRA to dispute the proposition that the courts have the final authority to construe statutes and "must reject administrative constructions of [a] statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) (citations omitted). This final authority is reflected in the language of the APA requiring courts to set aside agency action "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1976). The FLRA does assert, however, that when a statute may be construed in several ways, each of which is reasonably "in accordance with law," we must defer to the interpretation of the agency charged with administering that statute. *See Federal Election Commission v. Democratic Senatorial Campaign Committee, supra,* 454 U.S. at 42–43, 102 S.Ct. at 47–48; *Department of Defense, Army-Air Force Exchange Service v. Federal Labor Relations Authority, supra,* 659 F.2d at 1162 n. 121. We do not have such a situation here.

In the present case, we are asked to decide if the Civil Service Reform Act conflicts with the National Guard Technicians Act, and to resolve that conflict if it exists. Because the civil service reform statute did not explicitly refer to or repeal the technicians legislation, this decision requires interpretation of both statutes. The FLRA apparently believes that, by virtue of the general principle of judicial deference just discussed, it has a preferred position in deciding whether the Civil Service Reform Act of 1978 conflicts with the National Guard Technicians Act of 1968 and, assuming such a conflict, in deciding whether the civil service reform legislation repealed by implication any inconsistent provisions in the technicians statute. We disagree.

The opinion of the FLRA regarding the scope of the National Guard Technicians Act is entitled to respect before this Court, but we are not bound by its construction of that statute even if reasonable. *See Division of Military and Naval Affairs, State of New York v. Federal Labor Relations Authority,* 683 F.2d 45, 48 (2d Cir.1982); *Tsosie v. Califano,* 651 F.2d 719, 722 (10th Cir. 1981). Furthermore, if we find a conflict between the technicians statute and the later civil service reform legislation, we are obligated to resolve it.

B. *Negotiability of Union Proposals for Grievance Procedures Culminating in Binding Arbitration.*

The parties do not seriously dispute that, absent the National Guard Technicians Act, the Civil Service Reform Act mandates good faith bargaining by the Guard over proposals such as those here in dispute. To overcome the duty to bargain, we must find that the technicians statute is in actual conflict with this mandate and that the conflict should be resolved in favor of the continuing applicability of the earlier statute. Based on the express language of these statutes, we hold that the Guard's duty, under the Civil Service Reform Act, to bargain over proposals which allow binding arbitration of matters reserved for ultimate determination by the state adjutants general in the technicians act conflicts with that technicians statute. In view of the legislative history and purpose of both acts, we also hold that Congress did not intend to repeal the earlier technicians legislation by enacting the Civil Service Reform Act.

1. *Conflict in Statutes.*

The National Guard Technicians Act provides:

Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—

(1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be prompt-

ly separated from his technician employment by the adjutant general of the jurisdiction concerned;

(2) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who fails to meet the military security standards established by the Secretary concerned for a member of a reserve component of the armed force under his jurisdiction may be separated from his employment as a technician and concurrently discharged from the National Guard by the adjutant general of the jurisdiction concerned;

(3) a technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned;

(4) a reduction in force, removal, or an adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation shall be accomplished by the adjutant general of the jurisdiction concerned;

(5) a right of appeal which may exist with respect to clause (1), (2), (3), or (4) shall not extend beyond the adjutant general of the jurisdiction concerned[.]

32 U.S.C. § 709(e) (1976)..

The union proposals, as submitted to the Guard, facially conflict with subsection (5) of this provision insofar as they would allow a technician to file a grievance subject to binding arbitration over: (1) a discharge because of separation from the Guard, id. § 709(e)(1); (2) a discharge because of failure to meet military security standards, id. § 709(e)(2); (3) a discharge for cause, id. § 709(e)(3); or (4) a discharge, suspension, furlough without pay, or reduction in rank or compensation because of a reduction in force (RIF) or otherwise, id. § 709(e)(4). The binding arbitration of such matters would be an "appeal * * * beyond the adjutant general of the jurisdiction concerned." Id. § 709(e)(5).

The FLRA contends that the proposals do not conflict with the technicians statute when read in light of the Civil Service Reform Act, however. To resolve disputes over all matters not excluded by the parties, 5 U.S.C. § 7121(a) (Supp. IV 1980), the Civil Service Reform Act requires federal collective bargaining agreements to include a grievance procedure which "provide[s] that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency." Id. § 7121(b)(3)(C). The Act then provides, however, that adverse personnel matters "which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both." Id. § 7121(e)(1). Union Proposal III reflects the technicians' "option" to use the negotiated grievance procedure. Thus, the FLRA contends, the proposals create only an alternative procedure to obtain review of the adverse personnel matters listed in section 709(e) of the technicians statute and do not detract from the authority of the state adjutants general to decide appeals of those matters brought before them.

The position of the FLRA might be correct were it not for language in the National Guard Technicians Act which indicates that the review of the state adjutants general over the listed matters should be exclusive. The provision for such review states unequivocally that "[n]otwithstanding any other provision of law," the technicians' right to appeal those matters ends with the adjutants general. 32 U.S.C. § 709(e) (1976). Allowing a technician to substitute binding arbitration for the state adjutant's general review of the matters listed in section 709(e) would violate the intent of Congress in 1968 to place such matters under exclusive state control.[6]

6. We reject the FLRA's attempt to distinguish the statutory appeal limitation created by the

National Guard Technicians Act and alternative grievance and arbitration procedures: to allow

Substitution of an arbitrator for the state adjutant general is allowed by the Civil Service Reform Act, however, and could be imposed upon the Guard if we uphold the FLRA's finding of negotiability in this case.[7] Because the Civil Service Reform Act would allow an arbitrator to take the place of the state adjutant general as final decision-maker in section 709(e) disputes, at the option of an aggrieved technician, we find an actual conflict between the Civil Service Reform Act and the National Guard Technicians Act.[8] We now turn to the resolution of that conflict.

2. *Resolution of Conflict in Statutes.*

Having held that the Civil Service Reform Act imposes a duty to bargain over, and possibly agree to, a grievance procedure culminating in binding arbitration which covers matters listed in 32 U.S.C. § 709(e) (1976), and that this duty conflicts with the National Guard Technicians Act, we must resolve that conflict based on the legislative history and purpose underlying each stat-

ute. *See United States Department of Agriculture v. Federal Labor Relations Authority,* 691 F.2d 1242, 1247–50 (8th Cir. 1982).[9] The history, purpose, and structure of the National Guard Technicians Act and the Civil Service Reform Act are detailed in *New Jersey Air National Guard v. Federal Labor Relations Authority, supra,* 677 F.2d at 278–281. We, therefore, truncate our discussion of the statutory schemes.

The National Guard Technicians Act of 1968 made Guard technicians federal employees, replacing their past state employee status, mainly to afford them the retirement and other benefits of federal civil servants and to bring them under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 & 2671–2680 (1976). *New Jersey Air National Guard v. Federal Labor Relations Authority, supra,* 677 F.2d at 279 & n. 2. Most technicians were required to serve as members of the Guard, however, *id.* at 279, and the state adjutants general remained in the position of hiring and supervising the tech-

technicians to totally bypass review by the state adjutants general and to take a matter listed in section 709(e) to binding arbitration in effect would be an appeal "beyond" the adjutants' general reviewing authority. *New Jersey Air National Guard v. Federal Labor Relations Authority,* 677 F.2d 276, 282 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982).

7. Under the Civil Service Reform Act, any negotiable issue may be the subject of an order by the Federal Service Impasses Panel. If a negotiation impasse cannot be resolved by agreement or mediation, either party may bring the matter before the Panel. 5 U.S.C. § 7119(b)(1) (Supp. IV 1980). That Panel has the authority to "take whatever action is necessary and not inconsistent with this chapter to resolve the impasse." *Id.* § 7119(c)(5)(B)(iii). Such authority has been construed to include forcing adoption of disputed proposals. *See Department of Defense, Army-Air Force Exchange Service v. Federal Labor Relations Authority,* 659 F.2d 1140, 1146 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). *See also* S.Rep. No. 95–969, 95th Cong., 2d Sess. 112, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2834 (Panel's final action "binding for the term of the agreement unless the parties mutually agree otherwise"); *Veterans Administration Medical Center, Iron Mountain, Michigan* and *Local 2280, AFGE, AFL–CIO,* Case No. 80 F.S.I.P. 41 at 5

(1980) (Panel ordering adoption of union grievance procedure proposal).

8. The general duty to bargain under the Civil Service Reform Act is limited to matters "not inconsistent with any Federal law," 5 U.S.C. §§ 7117(a)(1) & (a)(2), or not "specifically provided for by Federal statute," *id.* §§ 7103(a)(14)(C) & (a)(12). Based on this language, we might decide that the inconsistency with the National Guard Technicians Act which we have just outlined falls under these exceptions to coverage in the Civil Service Reform Act. The more specific duty to bargain over grievance and arbitration procedures in section 7121 of the civil service reform statute does not contain such a proviso, however, so we find that actual conflict in the statutory schemes does exist. *See New Jersey Air National Guard v. Federal Labor Relations Authority, supra,* 677 F.2d at 283 & n. 7.

9. We note that consideration of both statutes in the present case is necessary to arrive at an appropriate result; in our earlier *United States Department of Agriculture* decision, the necessity of construing provisions beyond the jurisdiction of the FLRA was questionable. *See United States Department of Agriculture v. Federal Labor Relations Authority,* 691 F.2d 1242 at 1252 & n. 2 (8th Cir.1982) (Heaney, J., dissenting).

nicians. *See* H.R.Rep. No. 1823, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 3318, 3330. Thus, Guard technicians became a hybrid class—they were considered federal civilian employees, but worked in a military environment and under the immediate control of state officers.

The House Report from the Committee on Armed Services which preceded the National Guard Technicians Act indicated that the adjutants' general statutory control over Guard technicians was in recognition of "the State character of the Guard." H.R.Rep. No. 1823, *supra, reprinted in* 1968 U.S.Code Cong. & Ad.News at 3330. Congress allowed this continued state control over various employment decisions regarding Guard technicians while at the same time affording federal benefits to the technicians and civil plaintiffs harmed by them in the course of their employment. *See New Jersey Air National Guard v. Federal Labor Relations Authority, supra,* 677 F.2d at 284 (recounting similar language in the Senate Report on this bill). Against this backdrop, it seems certain that the 1968 Congress intended the review of the state adjutants general under section 709(e) to be exclusive as a matter of federal law. The question then becomes whether later action by the 1978 Congress, in enacting the Civil Service Reform Act, was meant to impinge upon this exclusivity of review.

The Civil Service Reform Act of 1978 codified and changed federal law of public employment which was previously governed by various executive orders. The Labor-Management Relations Chapter of the Act, Title VII, developed a scheme of collective bargaining for federal employees shaped around the differences and needs of employment by the federal government rather than a private entity. *See* S.Rep. No. 95–969, 95th Cong., 2d Sess. 12–13, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723,

2734–2735. The FLRA was created to perform a role akin to that of the National Labor Relations Board in the private sector. *New Jersey Air National Guard v. Federal Labor Relations Authority, supra,* 677 F.2d at 280 & n. 4.

The Civil Service Reform Act did not expressly address the interrelationship of its provisions with those of the National Guard Technicians Act. Neither have the parties cited any reference to the technicians statute in the legislative history of the 1978 Act.[10] The 1978 legislation dealt with a myriad of federal employment problems, only one of which was labor-management relations. To be sure, the legislative history concerning the duty to bargain over grievance and arbitration procedures indicates that Congress intended a broad reach for that duty. *See, e.g.,* S.Rep. No. 95–969, *supra,* at 109, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 2831 (parties may negotiate into grievance and arbitration procedure even matters "covered by statutory appellate procedures"); *but cf.* H.R.Conf. Rep. No. 95–1717, 95th Cong., 2d Sess. 157, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2860, 2891 (scope of grievance and arbitration procedure extends only to "matters that under the provisions of law could be submitted" and not excluded by agreement of the parties). As a general proposition, this duty covers matters subject to statutory appellate procedures to the extent of providing an alternative to those procedures. *See* S.Rep. No. 95–969, *supra,* at 110, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 2832; 5 U.S.C. § 7121(e)(1) (Supp. IV 1980). The legislative history and broad purpose of the Civil Service Reform Act, however, do not provide an affirmative expression of congressional intent to override the specific provision for exclusive review of section 709(e) matters by the

---

**10.** The FLRA cites legislative history from another bill considered by Congress in 1978 to show that Congress was aware of the National Guard Technicians Act when it was considering the Civil Service Reform Act. *See* H.R.Rep. No. 95–894, 95th Cong., 2d Sess. 6–7, *reprinted in* 1978 U.S.Code Cong. & Ad.News 7575, 7590. Even assuming from this that Congress had

National Guard technicians in mind at the time, albeit in the context of different legislation than that at issue in the present case, we do not see how this resolves the conflict between the statutes with which we are now concerned. *See New Jersey Air National Guard v. Federal Labor Relations Authority, supra,* 677 F.2d at 285 n. 8.

state adjutants general in the technicians statute.

Under such circumstances, we are constrained from declaring that the Civil Service Reform Act repealed by implication section 709(e)(5) of the National Guard Technicians Act. In *Morton v. Mancari,* the Supreme Court stated that in such a situation, "the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (citation omitted). In *Radzanower v. Touche Ross & Co.,* the Court repeated this proposition, but added that an implied repeal might also be found where the later statute covers the whole subject of the earlier and is clearly intended as a substitute. 426 U.S. 148, 155–157, 96 S.Ct. 1989, 1993–94, 48 L.Ed.2d 540 (1976). In light of these decisions, we find that repeal by implication in the present case is unjustified.

In 1978, Congress obviously was concerned that the duty to bargain over broad grievance and arbitration procedures in the federal sector be protected, even in the face of statutory appellate procedures available to employees of certain agencies. This concern takes on greater significance when we consider the number of matters statutorily reserved to management discretion, *see* 5 U.S.C. § 7106 (Supp. IV 1980), and the relatively narrow scope of federal employee rights, *see id.* § 7102. The legislative history and purpose of the 1968 National Guard Technicians Act reflects far different concerns, however, in dealing with the hybrid

class of federal employees called Guard technicians. Preservation of ultimate control over these technicians by the state adjutants general was a means of retaining some of their character as military personnel working at the state level.

We find that respecting both of these statutory concerns is the proper resolution of the conflict here. By delineating a narrow area of matters which cannot be subject to binding arbitration, we can protect the exclusivity of review intended to remain with the state adjutants general while leaving open all other matters properly negotiable under the Civil Service Reform Act. *Cf. Morton v. Mancari, supra,* 417 U.S. at 545 & 551, 94 S.Ct. at 2480 & 2483 (Indian employment preference in 1934 legislation not implicitly repealed by later equal employment opportunity statute). In addition, any limitation we here recognize on the scope of the duty to bargain over grievance and arbitration procedures only affects negotiations with National Guard technicians; that duty remains fully applicable in negotiations with federal civil servants in other fields as required by law. Therefore, we hold that the National Guard is not required to bargain over any union proposals which would allow binding arbitration of disputes covering matters listed in 32 U.S.C. §§ 709(e)(1)–(e)(4) (1976).

We are not asked in this case to absolve the Guard from the duty to bargain over grievance procedures covering section 709(e) matters which culminate in final review by the state adjutants general.[11] Nor

---

11. The parties do not directly address the issue of whether the Civil Service Reform Act prohibits a grievance procedure which does not include binding arbitration. The Act states that any grievance procedure negotiated under section 7121 must include a provision for "binding arbitration which may be invoked by either the exclusive representative or the agency." 5 U.S.C. § 7121(b)(3)(C) (Supp. IV 1980). The Act also provides that a grievance procedure thus negotiated is the exclusive procedure for the settlement of grievances—except for the alternative statutory appellate procedures discussed in sections 7121(d) & (e)—over all matters not excluded by agreement of the parties. *Id.* §§ 7121(a)(1) & (a)(2). This section 7121 scheme could be read to require binding

arbitration as the final step in any negotiated grievance procedure, with the parties' power of exclusion limited to exclusion of agreed matters, not substitution of other grievance procedures without binding arbitration. *See* S.Rep. No. 95–969, *supra,* at 110, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 2832 (provision for arbitration in the Civil Service Reform Act "contrasts with the provisions of Executive Order 11491 under which the determination as to whether to provide for arbitration was left to negotiation between the parties").

Assuming without deciding that, in normal circumstances, the Civil Service Reform Act requires binding arbitration as a part of any negotiated grievance procedure, this requirement is in direct conflict with section 709(e) of

are we asked to protect the Guard from bargaining over a grievance procedure, which could include provisions for binding arbitration, to review personnel actions not covered in section 709(e) of the technicians statute, such as vacation or daily work assignments. We therefore restrict our holding to the proposals before us and to the matters specifically listed in section 709(e).

## III. CONCLUSION

The plea of nonnegotiability might be overused by federal agencies unaccustomed or reluctant to bargain openly with the exclusive representatives of their employees. *See* McCabe, *Problems in Federal Sector Labor-Management Relations Under Title VII of the Civil Service Reform Act of 1978,* 33 Lab.L.J. 560, 561–562 (1982). We do not intend to increase the volume or frequency of such a plea in circumstances different from those presently before us. We set aside the decision of the FLRA only insofar as it requires the Guard to negotiate regarding union proposals which would allow binding arbitration of matters reserved for the exclusive review of the state adjutants general in section 709(e) of the National Guard Technicians Act. Union Proposals I, II, and III are nonnegotiable to the extent of any conflict with this holding.

the National Guard Technicians Act for the reasons earlier detailed in this opinion. We do not feel that such a conflict prevents bargaining over all grievance procedures with respect to section 709(e) disputes, however, since the only conflict with section 709(e) concerns the final decision-maker, not the steps required to reach that decision-maker. Thus, in this case, we resolve the conflict between the National Guard Technicians Act and the Civil Service Reform Act by requiring the state adjutant general to be the final decision-maker, rather than by totally foreclosing the possibility of a negotiated grievance procedure tailored to that end. This resolution preserves the "sense and purpose" of both statutes. *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981).