VETERANS ADMINISTRATION MEDICAL CENTER, MINNEAPOLIS, MINNESOTA, Petitioner,

v.

No. 80–2081.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1982.

Decided Feb. 8, 1983.

Rehearing and Rehearing En Banc Denied March 29, 1983.

J. Paul McGrath, Asst. Atty. Gen., William Kanter, Linda Jan S. Pack, Attys., Appellate Staff Civ. Div., Dept. of Justice, Washington, D.C., for petitioner.

Charles A. Hobbie, Staff Counsel, James R. Rosa, Gen. Counsel, Washington, D.C., for American Federation of Government Employees, AFL–CIO.

Steven H. Svartz, Acting Sol., William R. Tobey, Atty., Federal Labor Relations Authority, Washington, D.C., for respondent.

Before HEANEY and JOHN R. GIBSON, Circuit Judges, and DUMBAULD,* Senior District Judge.

HEANEY, Circuit Judge.

The Veterans Administration Medical Center, Minneapolis, Minnesota [Veterans Administration], petitions this Court to reverse the decision of the Federal Labor Relations Authority [FLRA][1] which requires the Veterans Administration to bargain over certain disciplinary and adverse action proposals allegedly in conflict with the discipline procedures prescribed for medical professionals in 38 U.S.C. § 4110 (1976). For the reasons expressed in our opinion in *State of Nebraska, Military Department, Office of the Adjutant General v.*

---

* The Honorable EDWARD DUMBAULD, Senior Judge, Western District of Pennsylvania.

1. *American Federation of Government Employees, Local 3669, AFL–CIO, and Veterans Ad-*

---

*Federal Labor Relations Authority,* 705 F.2d 945 (8th Cir.1983), the decision of the FLRA is set aside insofar as it requires bargaining over proposals creating grievance and arbitration procedures for disputed matters covered by section 4110 of Title 38.

During contract negotiations between the American Federation of Government Employees, Local 3669, AFL–CIO [union], and the Veterans Administration, the union submitted the following proposals:

## ARTICLE XXIV

### DISCIPLINARY ACTIONS

*Section 2.* If the employer proposes to suspend an employee for 14 calendar days or less, the following procedures will apply:

(a) The employer will provide the employee with 10 workdays advance written notice of the proposed action;

(b) the notice must state the reasons for the proposed discipline specifically and in detail so as to delineate specifics to which the employee can respond, and must clearly state the employee's right to make a response to the proposal and his/her right to be represented by the union;

(c) The employee may file a written response and/or make an oral response to the notification prior to the end of the 10 workday notice period;

(d) after receipt of the written and/or oral response or the termination of the notice period, management will issue a final written decision to the employee which shall include a statement of the employee's appeal and/or grievance rights.

### ADVERSE ACTION

*Section 2.*

\*     \*     \*     \*     \*     \*

---

*ministration Medical Center, Minneapolis, Minnesota,* 4 F.L.R.A. No. 53 (1980) (motion for reconsideration denied, April 28, 1982).

(c) The written notice must state the reasons for the adverse action specifically and in detail, so as to delineate specifics to which the employee can respond, and must clearly state the employee's right to make a response to the proposal and his/her right to be represented by the union.

(d) The employee may file a written response and/or make an oral response to the proposed notice within 10 workdays after receipt of the written notice.

(e) Within 10 workdays of receipt of the written and/or oral response or the termination of the notice period, the employer will issue a final written decision to the employee which shall include a statement of the employee's right to appeal to the Veterans Administration and/or the employee's right to file a grievance in accordance with this Agreement.

*Section 3.*

(a) An employee will in any adverse action, be furnished a copy of all written documents which contain material and/or evidence relied on by the employer as a basis for the reasons and specifications.

(b) If the adverse action is based on an investigation report, those portions of all written documents from the investigation report which relate to the specifications will be furnished to the employee.

(c) The documentations specified in (a) and (b) above will be attached to the notice of decision of adverse action.

The Veterans Administration alleged that these proposals were nonnegotiable because they conflicted with the discipline procedures provided in 38 U.S.C. § 4110 (1976) for certain Department of Medicine and Surgery employees (hereafter DM & S professionals).[2] The union petitioned the FLRA to review this allegation and the FLRA decided that the proposals were ne-

gotiable because they provided for alternative dispute resolution procedures as permitted by the Civil Service Reform Act of 1978, 5 U.S.C. § 7121(e)(1) (Supp. IV 1980). The FLRA affirmed its decision in April of 1982 by denying the Veterans Administration's motion for reconsideration.

The legal questions raised in this appeal are identical to those in our *State of Nebraska, Military Department, Office of the Adjutant General* case. Based on that decision, we hold that the standard of review applicable to the FLRA order now under consideration is one of respect, but not deference. Furthermore, we again start with the proposition that the Civil Service Reform Act mandates good faith bargaining over the proposals at hand, absent other overriding provisions of law. Thus, our task in the present case is first, to determine whether section 4110 of the Veterans Administration law, Title 38, actually conflicts with the duty to bargain under the Civil Service Reform Act, and second, to resolve that conflict if it exists. *See State of Nebraska, Military Department, Office of the Adjutant General v. Federal Labor Relations Authority, supra,* 705 F.2d at 948.

The conflict between section 4110 and the Civil Service Reform Act is not as apparent as the conflict which we found between the statutes in *State of Nebraska, Military Department, Office of the Adjutant General.* In that case, the conflict existed by virtue of the express language of the statutes. *Id.* at 949–50 & n. 6.

In contrast, the section of the Veterans Administration law at issue in the present case provides for "peer" disciplinary boards "to determine, upon notice and fair hearing, charges of inaptitude, inefficiency, or misconduct" of DM & S professionals. 38 U.S.C. § 4110(a) (1976). The disciplinary boards investigate these charges and make recommendations for agency action, which

---

**2.** Section 4110 discipline procedures apply only to "person[s] employed in a position provided in paragraph (1) of section 4104 of this title." 38 U.S.C. § 4110(a) (1976). These persons are "[p]hysicians, dentists, podiatrists, optometrists, nurses, physician assistants, and expanded-function dental auxiliaries" (DM & S profes-

sionals) appointed by the Administrator of Veterans' Affairs (the head of the entire Veterans Administration). 38 U.S.C. § 4104(1) (Supp. IV 1980). DM & S professionals apparently constitute only part of the bargaining unit represented by the union in this case; our decision applies only to that segment of the unit.

could include "reprimand, suspension without pay, reduction in grade, [or] discharge." *Id.* § 4110(d). The Administrator of Veterans' Affairs, or the Chief Medical Director if delegated this authority, acts on the recommendations of the boards. *Id.* §§ 4110(d) & (e). The statute provides that the decision of the Administrator "shall be final." *Id.* § 4110(d).

The FLRA correctly asserts that, on its face, this section does not conflict with the provision for alternative grievance and arbitration procedures in the Civil Service Reform Act, 5 U.S.C. § 7121(e)(1) (Supp. IV 1980), nor with the proposals submitted to the Veterans Administration for bargaining in the present case. Section 4110 of the Veterans Administration law nowhere indicates that recommendation by a disciplinary board and final decision by the Administrator is the exclusive means of dispute resolution available to DM & S professionals. *Contra State of Nebraska, Military Department, Office of the Adjutant General v. Federal Labor Relations Authority, supra,* 705 F.2d at 949 (clear language of National Guard Technicians Act indicated that appeal to the state adjutant general was the exclusive final step in dispute resolution for matters listed in 32 U.S.C. § 709(e) (1976)). Simply declaring the decision of the Administrator "final" is insufficient to produce conflict with the Civil Service Reform Act,[3] since Congress obviously contemplated other statutory appellate procedures, which had to

end somewhere, when it created alternative grievance and arbitration procedures available at the employee's option in the Civil Service Reform Act, 5 U.S.C. § 7121(e)(1) (Supp. IV 1980). Any other interpretation would render meaningless section 7121(e)(1) of the civil service reform legislation, which presupposed some nonexclusive statutory appellate procedures that could coexist with the alternative grievance and arbitration procedures made available under the Civil Service Reform Act.

Looking at the legislative history of section 4110, however, we find that Congress intended disciplinary review by "peer" boards with ultimate decision by the Administrator to be exclusive insofar as it concerned "inaptitude, inefficiency, or misconduct" of DM & S professionals. The House of Representatives' debate over the original version of section 4110, passed in 1946 and virtually unchanged today, is replete with indications that Congress intended the Veterans Administration to have ultimate authority in disciplining DM & S personnel because of professional misconduct. Congress designed the 1946 legislation to circumvent civil service regulations which made it difficult to remove incompetent DM & S professionals:

> There were doctors who did not come up to what we thought they should and what chief medical officers thought they should; but in view of all the red tape and the difficulty of bringing charges

---

**3.** To support its allegation of conflict, the Veterans Administration also points to express language in the 1980 amendments to the Veterans Administration law here at issue, which reads:

> Notwithstanding any other provision of law, no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any provision of this subchapter shall be considered to supersede, override, or otherwise modify such provision of this subchapter except to the extent that such provision of title 5 or of such other law specifically provides, by specific reference to a provision of this subchapter, for such provision to be superseded, overridden, or otherwise modified.

38 U.S.C. § 4119 (Supp. IV 1980).
Although the language "[n]otwithstanding any other provision of law" was key to our determi-

nation of conflict between the National Guard Technicians Act and the Civil Service Reform Act in *State of Nebraska, Military Department, Office of the Adjutant General v. Federal Labor Relations Authority,* 705 F.2d 945, 949 (8th Cir.1983), in that case such language was tied directly to the restriction on appeals beyond the state adjutant general, indicating a contemporaneous congressional intent for appeal to the state adjutant general to be the exclusive final step in section 709(e) dispute resolution, 32 U.S.C. § 709(e) (1976). In the instant case, however, section 4119 only applies when there is a prior inconsistency, *i.e.,* conflict, between a provision in the Veterans Administration law and Title 5. We refuse to allow the Veterans Administration to use this language to "bootstrap" into a finding of conflict if none existed prior to the enactment of section 4119.

and proving them under the civil-service regulations, the chief medical officer got to the point where he said, "I cannot do anything about it anyway," arranged for a transfer of the man, and by so doing the inefficient doctor simply changed the scene of his activities, but the evil was not remedied.

91 Cong.Rec. H 11663 (daily ed. Dec. 7, 1945) (statement of Rep. Scrivner). *See also id.* at 11682–11683 (colloquy between Reps. Eberharter and Allen indicating that a discharged person's right of appeal ends with the Administrator); S.Rep. No. 858, 79th Cong., 1st Sess., *reprinted in* 1945 U.S. Code Cong.Serv. 956, 956 (Veterans Administration law creates authority to terminate unsatisfactory professionals free of the restrictions of the civil service laws).

Interpreting section 4110 in light of this legislative history, we hold that Congress intended the section 4110 disciplinary procedure to be exclusive at the time that section was enacted. This intent directly conflicts with the availability of a separate grievance procedure, and even binding arbitration, at the option of DM & S professionals under the Civil Service Reform Act.[4] We now consider the resolution of this conflict in statutory schemes, following the legal principles enunciated in *State of Nebraska, Military Department, Office of the Adjutant General.*

The legislative history of the Veterans Administration law, which we cited as indicative of conflict with the Civil Service Reform Act, presents clearly the purpose of the section 4110 disciplinary procedure—to free the Veterans Administration from the restrictions of the civil service system in disciplining DM & S personnel for professional misconduct. The purpose of Title VII of the Civil Service Reform Act of 1978 was far different—to lay the foundation for open and mutually beneficial labor-management relations throughout the federal sector. *See State of Nebraska, Military Department, Office of the Adjutant General v. Federal Labor Relations Authority, supra,* 705 F.2d at 951. In the absence of other guidance from Congress, we would resolve the conflict between these two statutes in favor of the duty to bargain over alternative grievance and arbitration procedures mandated in 5 U.S.C. § 7121(e)(1).

Such a resolution would be entirely consistent with our holding in *State of Nebraska, Military Department, Office of the Adjutant General.* Unlike that case, the legislative history of the Civil Service Reform Act contains an affirmative expression of congressional intent to override any inconsistent provisions in the Veterans Administration law. The report of the Senate Governmental Affairs Committee preceding the enactment of the Civil Service Reform Act explained section 7121(e)(1) as creating an option for civil service employees to contest matters arising under "other personnel systems applicable to employees covered by this subchapter, such as those provided in title 38, United States Code [the Veterans Administration law];" they could contest disputes under either the negotiated grievance and arbitration procedures or the available statutory appellate procedures.[5] S.Rep. No. 95–969, 95th Cong., 2d Sess. 110,

---

4. The parties are in apparent agreement that the proposals at hand create a grievance procedure which DM & S professionals could use subsequent to review and recommendation by the "peer" disciplinary boards. The Veterans Administration asserts that the existence of such a negotiated grievance procedure, even if it culminated in final review by the Administrator, conflicts with section 4110. Given the legislative history of section 4110, we agree. The boards were created not only to contribute medical expertise in recommending disciplinary action for professional misconduct, but to replace the "red tape" of civil service review with fair procedures designed by and for medical

professionals. *See* 91 Cong.Rec. H 11663 (daily ed. Dec. 7, 1945); 38 U.S.C. § 4110(a) (1976). Those procedures were thus made the exclusive means for DM & S professionals to respond to charges of professional misconduct. The existence of more "red tape," even in the form of a negotiated grievance procedure triggered by the recommendation of the "peer" disciplinary boards, conflicts with the attempt to simplify procedures by creating the boards.

5. The Veterans Administration does not dispute the proposition that DM & S professionals are generally covered by the Civil Service Reform Act.

958

*reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, 2832. We consider this to be an affirmative expression of congressional intent to repeal any conflicting provisions of the Veterans Administration law sufficient to override that earlier legislation. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 157–158, 96 S.Ct. 1989, 1994–95, 48 L.Ed.2d 540 (1976) (looking to legislative history for implied *pro tanto* repeal of earlier statute); *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (can find repeal by implication with an "affirmative showing of an intention to repeal").

Further action by Congress, however, prevents us from thus recognizing that the Civil Service Reform Act superseded by implication the DM & S disciplinary procedures created by section 4110 of the Veterans Administration law. In 1980, Congress amended the Veterans Administration law to provide that "[n]otwithstanding any other provision of law, no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any other provision of this subchapter shall be considered to supersede, override, or otherwise modify" the Veterans Administration law unless the other law specifically refers to such change. 38 U.S.C. § 4119 (Supp. IV 1980). Based on the express language of this amendment, therefore, we must resolve any conflict between section 4110 and the duty to bargain under section 7121 of the Civil Service Reform Act in favor of the continued applicability of the Veterans Administration law.[6]

On the facts of the present case, the continued applicability of section 4110 requires only a partial reversal of the FLRA's

finding of negotiability—the union proposals at hand conflict with section 4110 only insofar as they create alternative grievance procedures and allow binding arbitration of disputes regarding alleged "inaptitude, inefficiency, or misconduct" of DM & S professionals. Section 4110 covers these explicit matters of professional performance, but does not create procedures for the resolution of disputes over other personnel decisions common to all employment situations, such as vacation assignments or working conditions. We hold, therefore, that the union proposals before us are nonnegotiable insofar as they offer DM & S professionals alternatives to the exclusive section 4110 procedures for the resolution of disputes covered by that section. Our decision does not preclude proposals concerning grievance procedures, which could include binding arbitration, to be used in employment disputes not covered by section 4110. We also recognize the right of DM & S professionals to representation of their own choosing, which could include union representation where the employees so choose, during the critical "peer" disciplinary board review of section 4110 charges. *See* 38 U.S.C. § 4110(c) (1976) ("Any person answering to charges before a disciplinary board may be represented by counsel of his own choosing."). The decision of the FLRA is set aside to the extent of any conflict with this holding.

---

**6.** The FLRA cites language from an explanatory statement on the 1980 amendments indicating that they were not intended to "detract in any way from employee rights under existing collective bargaining agreements between the VA and its employees." Explanatory Statement of Compromise Agreement on H.R. 7102/S. 2534, 126 Cong.Rec. H 6850 (daily ed. July 31, 1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 2557, 2563 (discussing in particular the employee's right to consult with the union regarding specific personnel matters). The same statement contained language

similar to that of section 4119 itself, however, expressing Congress's intent that the Veterans Administration law (Title 38) control over any inconsistent civil service provisions unless those provisions required otherwise by "specific reference to the title 38 provision." *Id.,* 1980 U.S.Code Cong. & Ad.News at 2565. Viewed in this context, the legislative history of section 4119 does not alter its clear language which requires deference to the Veterans Administration law insofar as it conflicts with the Civil Service Reform Act.