**DIVISION OF MILITARY AND NAVAL AFFAIRS, STATE OF NEW YORK, and Department of Defense, Petitioners,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 1180, Docket 82–4036.**

United States Court of Appeals,
Second Circuit.

Argued May 24, 1982.

Decided June 28, 1982.

---

Douglas Letter, Atty., Civil Division, Dept. of Justice, Washington, D. C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., William Kanter, Washington, D. C., Atty., of counsel), for petitioners.

Ellen Stern, Atty., Federal Labor Relations Authority, Washington, D. C. (Mary Elizabeth Medaglia, Acting Sol., Washington, D. C., of counsel), for respondent.

Robert M. Tobias, Gen. Counsel, National Treasury Employees Union, Washington, D. C., John F. Bufe, Deputy Gen. Counsel, William F. White, Associate Gen. Counsel, Washington, D. C., for amicus curiae National Treasury Employees Union in Support of respondent FLRA.

Mark D. Roth, Asst. Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D. C., James R. Rosa, General Counsel, Washington, D. C., for amicus curiae American Federation of Government Employees, AFL–CIO in Support of respondent FLRA.

Before LUMBARD, OAKES and PIERCE, Circuit Judges.

LUMBARD, Circuit Judge:

The New York National Guard [1] petitions for review of an order of the Federal Labor Relations Authority (FLRA) which directs the Guard to pay the per diem and travel expenses incurred by representatives of civilian employees in collective bargaining with the Guard. The FLRA applies for enforcement of the order. We grant the petition for review and deny enforcement. We find no authority to support the FLRA's command that the federal government, alone among federally-regulated employers, must pay expenses incurred by its adversaries across the bargaining table.

The parties agree on the facts. The National Guard employs some 46,700 civilian technicians across the country to meet the day-to-day administrative, training and logistical needs of the Guard.[2] Approximately three-quarters of the technicians are represented by various unions, including the New York State Council of Association of Civilian Technicians, Inc. On two days in

1. The New York National Guard, although a state militia, is federally administered under Title 32 of the United States Code by the National Guard Bureau in the Pentagon, 10 U.S.C. § 3015 (1976). Therefore a division of the Department of Defense is petitioner here as the administrator of the New York National Guard.

2. National Guard technicians are federal employees. 32 U.S.C. § 709(d) (1976).

November 1979, and one day in April 1980, five members of the New York State Council represented their union in contract negotiations with the New York National Guard in Albany, New York. The technicians incurred travel and per diem expenses because they were not stationed in Albany. The Guard's principal negotiator incurred similar expenses. The Guard paid the expenses of its own negotiator but pursuant to its past practice declined to pay the expenses of the Union representatives. The Union filed unfair labor practice charges in spring of 1980 with the FLRA, and in December 1981 the FLRA found that the Union representatives were entitled to their travel/per diem costs under a previously issued FLRA Interpretation and Guidance, 2 FLRA No. 31 (1979).

The FLRA's Interpretation was not a regulation promulgated under 5 U.S.C. § 7134, but rather an informal ruling issued under 5 U.S.C. § 7105(a)(1). The FLRA in its Interpretation noted that government employees are entitled to reimbursement of travel and per diem expenses incurred on *official business*:

(a) Under regulations prescribed under § 5707 of this title, an employee while traveling on *official business* away from his designated post of duty . . . is entitled to . . . is entitled to . . . a per diem allowance . . . .

5 U.S.C. § 5702(a) (1976) (emphasis added).

The FLRA also noted that the Civil Service Reform Act of 1978 (CSRA) provided that government employees would draw their salaries for time spent in collective bargaining by designating such time as *official time*:

(a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized *official time* for such purposes.

---

**3.** Several other federal employers have challenged the FLRA's Interpretation & Guidance in similar cases before courts of appeals: *Bureau of the Mint v. Federal Labor Relations Authority*, 81–1194; 82–1195 (D.C.Cir.); *Department of Agriculture v. FLRA*, 81–1948 (8th Cir.); *Florida National Guard v. FLRA*, 81–5466 (11th Cir.).

P.L. 95–454, 95th Cong., 2d Sess. § 701, 92 Stat. 1111, 1214 (1978), 5 U.S.C. § 7131(a) (Supp. III 1979) (emphasis added).

Government employees had previously conducted collective bargaining under Executive Order 11491 (1969), 1969 U.S.Code Cong. & Ad.News 2948, which did not entitle employees to pay for time spent in collective bargaining. The FLRA concluded that when Congress expanded "official time" to compensate employees for bargaining time, Congress also meant to expand "official business" to compensate employee bargainers for travel and per diem expenses. The FLRA supported its conclusion by noting that Congress in the CSRA had declared that collective bargaining furthered the *public business*:

(a) The Congress finds that—(1) experience in both private and public employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—

(A) safeguards the public interest,

(B) contributes to the effective conduct of *public business*. . . .

P.L. 95–454, 95th Cong., 2d Sess. § 701, 92 Stat. 1111, 1192 (1978), 5 U.S.C. § 7101(a) (Supp. III 1979) (emphasis added).

The FLRA held that collective bargaining done on official time, which contributed to the effective conduct of public business, was "official business" within the meaning of 5 U.S.C. § 5702(a) and therefore employees engaged in collective bargaining were entitled to per diem. The National Guard, one of the first federal employers to suffer the consequences of the FLRA's Interpretation & Guidance,[3] argues the FLRA incorrectly interpreted the relevant statutes. We agree.

The Ninth Circuit upheld the FLRA's determination that federal employers must pay the per diem and travel expenses of federal employee bargainers. *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 672 F.2d 732, 737–38 (9th Cir. 1982). We disagree.

Our review of the FLRA's decision is not inhibited by the deference normally due the Authority's construction of its enabling statute. *See Internal Revenue Service v. Federal Labor Relations Authority*, 671 F.2d 560, 563 (D.C.Cir.1982). Here the FLRA's decision rests on an interpretation of "official business" in 5 U.S.C. § 5702(a) —a section not part of the CSRA, which created the FLRA, but instead part of a subchapter administered by the General Services Administration. 5 U.S.C. § 5707. No great deference is due an agency interpretation of another agency's statute. *See New Jersey Air Nat'l Guard v. Federal Labor Relations Authority*, 677 F.2d 276, at 281 n. 6 (3rd Cir. 1982).

We are cited to no legislative history supporting the FLRA's conclusion that collective bargaining on "official time" is also "official business." The FLRA relies instead on the Congressional finding that collective bargaining is in the public interest. Such a general declaration of policy is "too thin a reed" to support a substantive ruling which would cost the federal government substantial sums of money in per diem and travel expenses. *Cf. Pennhurst State School v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981) (statute's "bill of rights" for the handicapped does not create affirmative obligations on the states to treat the handicapped).

Moreover, the FLRA's extrapolation goes too far. Congress did not find that collective bargaining furthers the public interest. Congress found that *statutory protection* of collective bargaining furthers the public interest, *see* 5 U.S.C. § 7101(a) *and* CSRA § 3(10), 92 Stat. 1111, 1113 (1978). The import of the distinction becomes clear upon consideration of the legislative history of CSRA § 3(10), because the history indicates that Congress did not endorse collective bargaining as in the public interest. Congress merely stated that collective bargaining was not against the public interest and did not hamper public business:

> The conference substitute . . . adopts the Senate language which states as one of the policies of the United States that the right of Federal employees to . . . bargain collectively . . . *with full regard for the public interest and the effectual conduct of public business*, should be specifically recognized in statute."

Conference Report, H.R.Rep.No. 1717, 95th Cong. 2d Sess. 127 (1978), 1978 U.S.Code Cong. & Ad.News 2723, 2860. The same sentiments were expressed in the Senate Report:

> [Section 3(10)] states findings of Congress that the protection of the right of employees to . . . bargain collectively . . . *can be accomplished with full regard for the public interest* and contributes to the effective conduct of public business.

S.Rep.No. 969, 95th Cong. 1st Sess. 97 (1977), 1978 U.S.Code Cong. & Ad.News 2723, 2819 (emphasis added).

The reports indicate that Congress did not give collective bargaining the blanket endorsement that FLRA claims to have found in the statute. Moreover, the endorsement of collective bargaining was no more than the endorsement previously contained in Executive Order 11491. *See* S.Rep.No. 969, *supra*, at 17, 1978 U.S.Code Cong. & Ad.News at 2739.

Finally, though neither side saw fit to refer us to comparable practice in the private sector, we think it appropriate to note that the expense the FLRA would impose as routine upon the federal government is viewed as an extraordinary remedy by the National Labor Relations Board (NLRB). Only a decade ago, the NLRB held that it was without power to order a private employer to pay the costs of a breakdown in collective bargaining. *Ex-Cell-O Corp.*, 185 N.L.R.B. 107 (1970). The D.C. Circuit remanded on the ground that the NLRB did have such power, *International Union v. National Labor Relations Board*, 449 F.2d 1046 (D.C.Cir.1971) (per curiam), but that power has been exercised to compel payment of employee bargainers' per diem and travel expenses only as an extraordinary remedy for the employers' failure to bargain in good faith. *Marriott In-Flite Services*, 258 N.L.R.B. No. 99 (Sept. 30, 1981); *J. P. Stevens & Co., Inc.*, 239 N.L.R.B. 738, 773

(1978). Far from seeking a remedy for bad faith bargaining, the FLRA would hold that the federal government must always pay the bargaining costs of its adversaries. One of the obvious and universal purposes of collecting union dues is to pay for the expenses of such important activities as collective bargaining with the employer. Under all the circumstances we cannot believe that Congress meant the government to assume such an unusual burden, so different from any accepted practice in dealings between employers and employees, absent a clear and specific provision to that effect.

Petition granted; enforcement denied.

OAKES, Circuit Judge (dissenting).

I dissent.

The FLRA found that employees on official time under 5 U.S.C. § 7131(a) while representing their union in negotiating a collective bargaining agreement with their employing agency are entitled under 5 U.S.C. § 5702(a) to payments from that agency for their travel and per diem expenses. This construction is entitled to considerable deference. *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 672 F.2d 732, 735 (9th Cir. 1982) (upholding the FLRA's interpretation of section 7131(a) on the same issue as in this case). As the District of Columbia Circuit recently stated,

although we do not regard the agency argument to be without force, we have no doubt that the ruling of the FLRA should be upheld against it. It is the FLRA, not this court, that has been entrusted by Congress with broad powers to administer Title VII and to establish policies and provide guidance thereunder .... If the FLRA's construction of the statute is reasonably defensible, we are not free to reject it merely because we might decide differently if confronted with the question in the first instance. *See Ford Motor Co. v. NLRB*, 441 U.S. 488, 99 S.Ct. 1842, 60 L.Ed.2d 420 ... (1979).

*Department of Defense v. FLRA*, 659 F.2d 1140, 1162 n.121 (D.C.Cir.1981) (discussing the negotiability of certain union proposals).

Judge Lumbard's opinion does not defer to the FLRA because, it says, the FLRA's decision "rests on an interpretation of 'official business' in 5 U.S.C. § 5702(a)," which is administered by the General Services Administration, not the FLRA. This is simply not so. "Interpretation" of "official business" in section 5702(a) is at most secondarily involved. An employee travelling on official business is entitled under that statute to a per diem allowance. The FLRA simply made one brief reference to that statute in interpreting a provision of Title VII, 5 U.S.C. § 7131(a), authorizing "official time" for employees "representing an exclusive representative in the negotiation of a collective bargaining agreement."[1] The FLRA's

1. 5 U.S.C. § 7131 reads as follows:

Official time

(a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee otherwise would be in duty status. The number of employees for whom official time is authorized under this subsection shall not exceed the number of individuals designated as representing the agency for such purposes.

(b) Any activities performed by any employee relating to the internal business of a labor organization (including the solicitation of membership, elections of labor organization officials, and collection of dues) shall be performed during the time the employee is in a nonduty status.

(c) Except as provided in subsection (a) of this section, the Authority shall determine whether any employee participating for, or on behalf of, a labor organization in any phase of proceedings before the Authority shall be authorized official time for such purpose during the time the employee otherwise would be in a duty status.

(d) Except as provided in the preceding subsections of this section—

(1) any employee representing an exclusive representative, or

(2) in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative,

shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest.

Interpretation and Guidance, 2 F.L.R.A. 265 (1979), was issued pursuant to 5 U.S.C. § 7105(a)(1), requiring the FLRA to "provide leadership in establishing policies and guidance" so as to carry out the purpose of Title VII. It was issued after due notice, 44 Fed.Reg. 42778 (July 20, 1979), and hearing, *id.* at 76581 (Dec. 27, 1979). The FLRA addressed two questions in the Interpretation and Guidance:

1) Whether employees who are on official time under section 7131 of the Statute while representing an exclusive representative in the negotiation of a collective bargaining agreement are entitled to payments from agencies for their travel and per diem expenses.

2) Whether the official time provisions of section 7131(a) of the Statute encompass all negotiations between an exclusive representative and an agency, regardless of whether such negotiations pertain to the negotiation or renegotiation of a basic collective bargaining agreement.

Virtually the entire Interpretation is devoted to the legislative history of Title VII and section 7131. Only a single paragraph in the eight page Interpretation refers to 5 U.S.C. § 5701 *et seq.*[2]

On the merits, while the position of the majority here has some strength, the FLRA's decision is "reasonably defensible" and should be upheld. In enacting section 7131(a) Congress rejected the limitations on official time contained in Exec. Order No. 11491, as amended, § 20 ("Employees who represent a recognized labor organization shall not be on official time when negotiating an agreement with agency management, except to the extent that the negotiating parties agree to other arrangements . . ."). Congress thus determined that federal employees, like management representatives, should receive their usual compensation while negotiating collective bargaining agreements—certainly not an unreasonable position once Congress decided that collective bargaining in respect to government employees is desirable and in the public interest. In light of this complete reversal of past practice regarding official time, the past practice of not paying employees for travel and per diem expenses incurred in collective bargaining is at best a frail basis for challenging the FLRA's interpretation.

I think the FLRA could reasonably conclude that Congress intended to change the past practice. Unlike the executive order, 5 U.S.C. § 7101 explicitly states that collective bargaining "contributes to the effective conduct of public business," and that "labor organizations and collective bargaining in the civil service are in the public interest." Since this language indicates that employees on "official time" within the meaning of section 7131(a) are conducting "public business" which is in the "public interest," it seems to follow that they are on "official business" when they are negotiating. In that event, 5 U.S.C. § 5702 authorizes payment of travel and per diem expenses.

---

2. The full paragraph on the fifth page of the Interpretation, 2 F.L.R.A. at 269, reads:

Neither the Statute, nor it legislative history, expressly adverts to the payment of travel expenses or per diem during participation in these negotiation activities. However, it is well established that such expenses are authorized when an employee "is engaged on official business for the Government" (Chapter 57, Subchapter I—*Travel and Subsistence Expenses; Mileage Allowances,* 5 U.S.C. § 5701, *et seq.*). As already mentioned, Congress, in adopting the Statute, specifically found in section 7101(a) that collective bargaining "contributes to the effective conduct of public business," and that "collective bargaining in the civil service [is] in the public interest." Further, Congress expressly mandated in sections 7114 and 7116(a)(5) and (b)(5) that such negotiations be conducted in good faith by the parties involved (92 Stat. 1202, 1204). Thus, an employee, while negotiating a collective bargaining agreement as a union representative and while on paid time entitled to his or her usual compensation and not in a leave status, is clearly engaged on "official business for the Government."

A fair reading of the Interpretation and Guidance is that the FLRA made the determination whether employees on official time are entitled to payments for travel and per diem on the basis of section 7131(a) and Title VII, and then concluded that employees participating in negotiation activities under that section are on "official business" and entitled to the payment of travel and per diem under 5 U.S.C. § 5701 *et seq.*, which simply operates to provide the authorization to expend funds.

Further support for the Authority's interpretation is found in the intent of Congress to reduce the unequal status of union and management, and in section 7131(a)'s provision that the number of union representatives entitled to official time "shall not exceed the number of individuals designated as representing the agency for such purposes." This last provision enables the agencies to limit their expenditure of funds on behalf of union representatives simply by reducing the number of management representatives. The National Labor Relations Act policy in respect to private employees is irrelevant. In short, like the Ninth Circuit in *Bureau of Alcohol, Tobacco and Firearms, supra,* I do not find the FLRA's interpretation either arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). I would grant enforcement.