**FLORIDA NATIONAL GUARD and Department of Defense, Petitioners, Cross-Respondents,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent, Cross-Petitioner.**

**No. 81–5466.**

United States Court of Appeals, Eleventh Circuit.

March 7, 1983.

William Kanter, Asst. Director, Appellate Staff, Douglas N. Letter, Civ. Div., Dept. of Justice, Washington, D.C., for petitioners, cross-respondents.

Raymond J. Molloy, Washington, D.C., for National Ass'n of Government Employees, Local R5–91.

Gordon P. Ramsey, Robert Freehling, Sol., Steven H. Svartz and Ellen Stern, Associate Sols., F.L.R.A., Washington, D.C., for respondent, cross-petitioner.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

KRAVITCH, Circuit Judge:

The Florida National Guard and the United States Department of Defense[1] petition for review of an order of the Federal Labor Relations Authority (FLRA) directing the Guard to pay the travel and per diem expenses incurred by union representatives while negotiating on behalf of the union. Although this is the first time we have been presented with such a challenge, three other circuit courts have addressed this precise issue.[2] The Eighth and Second Circuits denied enforcement of the FLRA order. *United States Department of Agriculture v. Federal Labor Relations Authority,* 691 F.2d 1242 (8th Cir.), *petition for cert. filed,* 51 U.S.L.W. 3484 (U.S. Dec. 13, 1982) (No. 82–979); *Division of Military and Naval Affairs v. Federal Labor Relations Authority,* 683 F.2d 45 (2d Cir.), *petition for cert. filed,* 51 U.S.L.W. 3485 (U.S. Dec. 16, 1982) (No. 82–1021). The Ninth Circuit upheld the Authority. *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 672 F.2d 732 (9th Cir.), *cert. granted,* —— U.S. ——, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983). Because we conclude that the FLRA incorrectly interpreted the statutes and legislative history pertinent to this issue, we align ourselves with the Eighth and Second Circuits and deny enforcement of the Authority's order.

---

1. Although a state militia, the Florida National Guard is federally administered under Title 32 of the United States Code by the National Guard Bureau, a joint bureau of the Departments of the Army and the Air Force. Therefore, the Department of Defense appears as petitioner with the Guard.

2. The District of Columbia Circuit is faced with a similar challenge in *Bureau of the Mint v. Federal Labor Relations Authority,* Nos. 81–1195, 82–1195 (D.C.Cir.).

## Factual Background

The facts in this case were stipulated by the parties. Therefore, we only summarize them here.

The Florida National Guard and the National Association of Government Employees were parties to a collective bargaining agreement that expired in January 1978. While negotiating a new agreement, the parties continued to operate under the terms of the expired contract. A bargaining impasse arose, and the parties referred the dispute to the Federal Services Impasse Panel for resolution. An intervening tentative agreement was rejected by the union membership. The Impasse Panel then directed that a fact-finding hearing be conducted in St. Augustine, Florida.

Ronald Meier, a technician[3] in the Florida National Guard and then president of the union local, attended the two days of hearings in his capacity as a negotiator for the union local. Meier was granted official time for the hours he spent at the hearing that corresponded with his duty hours, but was granted neither official time for his travel time from his duty station in Jacksonville to the hearing in St. Augustine nor travel and per diem expenses.

The union filed an unfair labor practice charge, and in March 1981, the Federal Labor Relations Authority ruled that under 5 U.S.C. § 7131(a)[4] Meier was entitled to official time to cover his travel to and from the impasse hearings. The Authority, relying on an Interpretation and Guidance, 2 F.L.R.A. 264 (1979), also determined that the Guard was responsible for Meier's travel and per diem expenses. The Guard does not challenge the determination that Meier was entitled to official time for the time spent travelling. It does, however, contest the conclusion that the Guard must pay his travel and per diem expenses. Because the FLRA's order is premised upon the 1979 Interpretation and Guidance, we focus upon the Interpretation itself. *See Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority*, 672 F.2d 732, 735 (9th Cir.), *cert. granted*, —— U.S. ——, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983).

## Standard of Review

Judicial review of FLRA decisions "shall be on the record in accordance with section 706 [of Title V]." 5 U.S.C. § 7123(c). 5 U.S.C. § 706(2)(A) provides that an agency's action should be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." For

---

**3.** National Guard technicians are employed to meet the "day-to-day administrative, training and logistical needs of the Guard." *Division of Military and Naval Affairs v. Federal Labor Relations Authority*, 683 F.2d 45, 46 (2d Cir.), *petition for cert. filed*, 51 U.S.L.W. 3485 (U.S. Dec. 16, 1982) (No. 82–1021). *See Simpson v. United States*, 467 F.Supp. 1122, 1124 (S.D.N.Y.1979). These civilian technicians are classified as federal employees. 32 U.S.C. § 709(d).

**4.** 5 U.S.C. § 7131 provides:

(a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee otherwise would be in a duty status. The number of employees for whom official time is authorized under this subsection shall not exceed the number of individuals designated as representing the agency for such purposes.

(b) Any activities performed by any employee relating to the internal business of a labor organization (including the solicitation of membership, elections of labor organization officials, and collection of dues) shall be performed during the time the employee is in a nonduty status.

(c) Except as provided in subsection (a) of this section, the Authority shall determine whether any employee participating for, or on behalf of, a labor organization in any phase of proceedings before the Authority shall be authorized official time for such purpose during the time the employee otherwise would be in a duty status.

(d) Except as provided in the preceding subsections of this section—

(1) any employee representing an exclusive representative, or

(2) in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest.

two reasons, however, this standard does not apply with its normal force to the instant case.

Section 7134 of Title 5 of the United States Code [5] grants the FLRA the authority to promulgate rules and regulations. The Interpretation and Guidance, however, was not promulgated pursuant to that authority. Rather, it was issued pursuant to 5 U.S.C. § 7105(a)(1),[6] which requires the Authority to take the lead in establishing guidelines and policies in the area of federal labor relations.

> As an interpretative rule, therefore, [the Interpretation and Guidance] may be accorded less weight than rules issued pursuant to the delegated rulemaking authority of Congress. *See General Electric Co. v. Gilbert,* 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976). The Supreme Court has stated that although interpretative rules reflect an agency's special expertise and are thus entitled to deference, their weight on judicial review will also depend on the thoroughness evident in their consideration, the validity of the reasoning, and their consistency with earlier and later pronouncements. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

*Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 672 F.2d 732, 735 (9th Cir.), *cert. granted,* ——

U.S. ——, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983).

Additionally, because the FLRA's Interpretation and Guidance is premised, at least in part, upon the Authority's reading of the term "official business" in 5 U.S.C. § 5702(a),[7] a section not part of the FLRA's enabling statute, but instead part of a subchapter administered by the General Services Administration, a lesser degree of deference is warranted. "No great deference is due an agency interpretation of another agency's statute." *Division of Military and Naval Affairs v. Federal Labor Relations Authority,* 683 F.2d 45, 48 (2d Cir.) (citing *New Jersey Air National Guard v. Federal Labor Relations Authority,* 677 F.2d 276, 281 n. 6 (3d Cir.1982)), *petition for cert. filed,* 51 U.S.L.W. 3485 (U.S. Dec. 16, 1982) (No. 82–1021). *See also United States Department of Agriculture v. Federal Labor Relations Authority,* 691 F.2d 1242, 1246–47 (8th Cir.), *petition for cert. filed,* 51 U.S. L.W. 3484 (U.S. Dec. 13, 1982) (No. 82–979). Thus, although we do not deem it proper to accord the FLRA's interpretation of the law no weight at all, neither will we blindly accept its rationale. We consider it proper to accord the Interpretation and Guidance that amount of deference and respect that its internal logic and thoroughness warrant.[8]

5. 5 U.S.C. § 7134 provides:
    The Authority, the General Counsel, the Federal Mediation and Conciliation Service, the Assistant Secretary of Labor for Labor Management Relations, and the Panel shall each prescribe rules and regulations to carry out the provisions of this chapter applicable to each of them, respectively. Provisions of subchapter II of chapter 5 of this title shall be applicable to the issuance, revision, or repeal of any such rule or regulation.

6. 5 U.S.C. § 7105(a)(1) provides:
    The Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter.

7. 5 U.S.C. § 5702(a) provides:
    Under regulations prescribed under section 5707 of this title, an employee while traveling on official business away from his designated post of duty, or in the case of an individual

described under section 5703 of this title, his home or regular place of business, is entitled to (1) a per diem allowance for travel inside the continental United States at a rate not to exceed $50, and (2) a per diem allowance for travel outside the continental United States, that may not exceed the rate established by the President, or his designee, for each locality where travel is to be performed. For travel consuming less than a full day, such rate may be allocated proportionately.

8. The Ninth Circuit accorded greater deference to the Interpretation and Guidance, determining that if the FLRA's position is reasonably defensible and supportable it must be upheld. *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 672 F.2d 732, 735–36 (9th Cir.), *cert. granted,* —— U.S. ——, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983). Even if we agreed that the Ninth Circuit's standard is the correct one to be applied, the FLRA's Interpretation and Guidance still would not pass muster.

*Analysis*

■ In its Interpretation and Guidance, the FLRA concedes that neither the statute nor the legislative history of Title VII of the Civil Service Reform Act of 1978, known commonly as the Federal Labor-Management Relations Act, expressly discusses the payment of travel and per diem expenses for union negotiators. To reach its conclusion that such expenses are congressionally mandated, the FLRA looks to its own enabling statute and to 5 U.S.C. § 5702(a), a statute administered by the General Services Administration.

The Authority's first premise is that an employee negotiating on behalf of the union membership is entitled to "official time" under 5 U.S.C. § 7131(a). Neither we nor the petitioners dispute that. Next, the FLRA cites 5 U.S.C. § 5702(a) for the truism that travel and per diem expenses are authorized when an employee "is engaged on official business for the Government." The great leap of faith occurs in moving to the conclusion that "an employee, while negotiating a collective bargaining agreement as a union representative and while on paid time entitled to his or her usual compensation and not in a leave status, is clearly engaged on 'official business for the Government.'" 2 F.L.R.A. at 269 (1979).

The FLRA's attempt at bridging the gap between the congressional decision that "official time" should be accorded and the conclusion that union negotiators are performing the Government's official business and therefore are entitled to travel and per diem expenses is predicated on Congress' statement of intent in adopting the Federal Labor-Management Relations Act:

(a) The Congress finds that—

(1) experience in both private and public employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—

(A) safeguards the public interest,

(B) contributes to the effective conduct of public business, and

(C) facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment; and

(2) the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government.

Therefore, labor organizations and collective bargaining in the civil service are in the public interest.

(b) It is the purpose of this chapter to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government. The provisions of this chapter should be interpreted in a manner consistent with the requirement of an effective and efficient Government.

5 U.S.C. § 7101. Because Congress found that collective bargaining "contributes to the effective conduct of public business," the FLRA reasons, Congress must mean that such bargaining constitutes "official business" within the definition of 5 U.S.C. § 5702(a).[9] Like the Eighth and Second

---

9. The FLRA relies on the intent of Congress to equalize the bargaining positions of management and labor. In the Interpretation, the Authority quotes a discussion of the official time provision of the Act in which Representative Clay states that labor organizations "should be allowed official time to carry out their statutory representational activities just as management uses official time to carry out its responsibilities." 124 Cong.Rec. H9, 638 (daily ed.

Sept. 13, 1978) (statement of Rep. Clay), *quoted in* Interpretation and Guidance, 2 F.L.R.A. 264 (1979).

Nowhere in Representative Clay's statement, however, is there any reference to congressional intent to reimburse union negotiators for travel and per diem expenses. Congress expressed its intent to equalize the amount of official time for the parties involved in the negotiating process, but it did not address the

Circuits, we cannot agree with this interpretation. *See United States Department of Agriculture v. Federal Labor Relations Authority,* 691 F.2d 1242 (8th Cir.), *petition for cert. filed,* 51 U.S.L.W. 3484 (U.S. Dec. 13, 1982) (No. 82–979); *Division of Military and Naval Affairs v. Federal Labor Relations Authority,* 683 F.2d 45 (2d Cir.), *petition for cert. filed,* 51 U.S.L.W. 3485 (U.S. Dec. 16, 1982) (No. 82–1021).[10]

The Authority's reliance on a general declaration of policy by Congress is "too thin a reed" to support the conclusion that collective bargaining on "official time" is also "official business." *Division of Military and Naval Affairs,* 683 F.2d at 48.

> [T]he FLRA's Interpretation assumes that Congress authorized additional expenditures to cover travel expenses and per diem without making even an oblique reference to that effect. Because we are unwilling to impose additional financial liability on the Government without an affirmative directive from Congress, we prefer the interpretation that does not make the Government liable for these expenses.

*United States Department of Agriculture,* 691 F.2d at 1247 (citing *Brookfield Construction Co. v. United States,* 661 F.2d 159, 163–64 (Ct.Cl.1981)).

Congress' declaration that the statutory protection of collective bargaining is in the public interest does not imply an intent to underwrite the process entirely. Neither does its expressed intent to more nearly equalize the status of the parties in bargaining evidence a mandate to the Government to assume the full financial burden.

When Congress enacted Title VII of the Civil Service Reform Act of 1978, it rejected the Senate version of the official time provision that would have incorporated the existing limitation on official time under Executive Order No. 11,491, as amended. Under the Order, the parties were allowed to authorize up to forty hours or up to one-half the time spent in negotiations during regular duty hours. It was clear under the Order that agencies were *not* authorized to pay the travel and per diem expenses for employees serving as union negotiators.

■ The FLRA argues that the expansion of "official time" in the Act as well as the endorsement of collective bargaining evidences the congressional intent to authorize the payment of travel and per diem expenses. We do not agree. Congress is deemed to know the executive and judicial gloss given to certain language and thus adopts the existing interpretation unless it affirmatively acts to change the meaning. *Lorillard v. Pons,* 434 U.S. 575, 580–581, 96 S.Ct. 866, 870, 55 L.Ed.2d 40, 46 (1978); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280, 294 n. 8 (1975). Congressional silence in the Act indicates acceptance of the prior practice.

It was not inconsistent for Congress to expand the availability of official time while disallowing the payment of travel and per diem expenses. Union dues are collected for such expenses. If the entire financial burden of the negotiating process were shouldered by the Government, inequality—not equality—of bargaining status would result.[11] In sum, we are not persuaded that

issue before us in this case. As we note in the text, where Congress is silent and no intent can be discerned from the statutes or their history, the more prudent judicial course is to adopt the interpretation that does not require the outlay of additional funds. Congress' knowledge of the policy under Executive Order No. 11,491, as amended, supports our position.

**10.** Both courts discuss the legislative history of the Federal Labor-Management Relations Act; our discussion of that history, therefore, is somewhat abbreviated. Neither court felt that the FLRA's Interpretation was entitled to a great amount of deference because of the Au-

thority's reliance on 5 U.S.C. § 5702, which provides for the payment of travel and per diem expenses to "an employee while traveling on official business away from his designated post of duty." Without a clear expression of congressional intent, the Eighth and Second Circuits were reluctant to impose such a potentially enormous financial burden on the Government, and so are we.

**11.** If the Authority's position prevailed, the Federal Government would be the only federally regulated employer required to pay the travel and per diem expenses incurred by union

Congress, without the briefest of references to the matter, intended the Government to assume this potentially enormous financial liability. Therefore, we grant the petition of review and DENY ENFORCEMENT.

negotiators. Payment of these costs by the employer in private sector negotiations is viewed as an extraordinary remedy by the National Labor Relations Board. The NLRB has exercised its power to compel payment of costs only as a remedy for the employer's failure to negotiate in good faith. *See Marriott In-Flite Services,* 258 N.L.R.B. No. 99 (Sept. 30, 1981); *J.P. Stevens & Co., Inc.,* 239 N.L.R.B. 738, 773 (1978). The payment of these costs as a matter

of course represents a dramatic departure from prior practice in both the private sector and in the public sector under Executive Order No. 11,491, as amended.

The FLRA position is a windfall to unions, which would no longer bear the same economic incentive as the Government to negotiate quickly and effectively. Equality dictates that each side bear its own travel and per diem costs.