**PROFESSIONAL AIRWAYS SYSTEMS SPECIALISTS, MEBA, AFL–CIO, Petitioner,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**PROFESSIONAL AIRWAYS SYSTEMS SPECIALISTS, MEBA, AFL–CIO, Petitioner,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**Nos. 85–1769, 85–1827.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1986.

Decided Jan. 16, 1987.

Joseph E. Kolick, Jr., Washington, D.C., for petitioner.

Arthur Horowitz, Atty., Federal Labor Relations Authority, Washington, D.C., for respondent.

Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., William E. Persina, Associate Sol. and William R. Tobey, Attorney, Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Before STARR and BUCKLEY, Circuit Judges and REVERCOMB,* District Judge.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

These consolidated cases arise under the Federal Service Labor-Management Relations Statute and the Back Pay Act. In both cases, the Federal Labor Relations Authority (FLRA or Authority) found that the Federal Aviation Administration (FAA) had committed an unfair labor practice in refusing to bargain over the impact and implementation of certain substantive changes in its organization. The FLRA granted various forms of relief, but denied petitioners' requests for back pay. In so doing, the Authority applied, in effect, a *per se* rule under the Back Pay Act denying back pay in instances where the agency-employer enjoyed the right to take the substantive action but, in the process of taking the action, committed an unfair labor practice by failing to engage in "impact and implementation" bargaining. We conclude that, although the FLRA's requirement of a causal nexus between the violation and the loss of pay is lawful and appropriate, the Authority's *per se* rule is contrary to the Back Pay Act.

I

The facts of the two cases are easily summarized. In *Federal Aviation Administration* (No. 33), 20 F.L.R.A. 273 (1985), the FAA reorganized the four Air Route Control Centers in its Great Lakes Region. The reorganization resulted in scheduling changes that reduced the premium pay to "watchstanding" technicians.[1] In *Federal Aviation Administration* (No. 68), 20 F.L.R.A. 548 (1985), the FAA directed a reduction-in-force, known in civil service parlance as a "RIF," at its Albany, New York Airways Facilities Section. The RIF led to the discharge of one employee, Andrew Panek.

In both the Great Lakes and Albany cases, the FAA, pursuant to its nationwide policy, refused to engage in "impact and implementation" bargaining with the employees' duly certified representative.[2] In both instances, the Administrative Law Judges found that the FAA's actions violated section 7116(a)(5) of the Federal Service

---

* Of the United States District Court for the District of Columbia sitting by designation pursuant to 28 U.S.C. § 292(a).

1. "Watchstanders" are electronic technicians who, among other things, work rotating shifts. Pursuant to federal law, these employees earn premium pay when working between the hours of 6:00 p.m. and 6:00 a.m., weekends, and holidays. 5 U.S.C. §§ 5545, 5546 (1982 & Supp. III 1985).

2. Under section 7106(b)(3), Professional Airways Systems Specialists, MEBA, AFL–CIO (the Union) had the right to negotiate "appropriate arrangements for employees adversely affected by the exercise of any authority under [Section 7106] by such management officials." 5 U.S.C. § 7106(b)(3) (1982 & Supp. III 1985). The Union concedes that FAA's decisions to reorganize and to reduce its work force was a nonbargainable right. *Id.* § 7106(a).

Labor-Management Relations Statute, 5 U.S.C. § 7116(a)(5) (1982 & Supp. III 1985),[3] and recommended that the FLRA order the FAA to restore the *status quo ante* by rescinding the unlawfully implemented changes. The ALJs differed, however, with regard to whether the employees were eligible for back pay under the Back Pay Act, 5 U.S.C. § 5596 (1982). In the reorganization case, the ALJ recommended that the affected employees receive back pay. In the RIF case, in contrast, the ALJ rejected Mr. Panek's request for back pay.[4]

Both cases were appealed to the FLRA.[5] In the RIF case, the Authority upheld the ALJ's denial of back pay. *FAA* (No. 68), 20 F.L.R.A. at 548–49. In the reorganization case, the Authority, in a footnote, vacated the back pay award recommended by the ALJ. Explaining its denial of back pay, the FLRA recited its previously articulated requirement of a "but for" nexus between the improper action and the loss in pay. The FLRA then stated: "In the instant case, the Authority, noting that the [ALJ] recommended the make whole remedy without applying such a test and the lack of evidence in the record to support such a finding, finds that a make whole remedy is unwarranted." *FAA* (No. 33), 20 F.L.R.A. at 274.

The Union filed petitions with this court to review both orders. On February 4, 1986, the court issued an order consolidating the two cases.

## II

The sole issue is whether the FLRA's interpretation of the Back Pay Act is consistent with that statute.[6] The Back Pay Act provides that an agency employee who is determined "to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee" is entitled to back pay in the amount that "the employee normally would have earned or received during the period if the personnel action had not occurred." *Id.* § 5596(b)(1). In applying the statute, the FLRA has developed a two-part test. As the Authority has described its approach, "in order for a back pay order to be authorized under the Back Pay Act, ... there must be a determination that not only has an employee been adversely affected by an unjustified or unwarranted personnel action, but also that but for the improper action such employee would not have suffered a loss or reduction in pay, allowances, or differentials." *FAA* (No. 33), 20 F.L.R.A. at 274.

---

**3.** Section 7116 provides in pertinent part:
   (a) For the purpose of this chapter, it shall be an unfair labor practice for an agency—
      (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

   \*    \*    \*    \*    \*    \*

      (5) to refuse to consult or negotiate in good faith with a labor organization as required by [the statute].
5 U.S.C. § 7116 (1982 & Supp. III 1985).

**4.** In the reorganization case, the ALJ recommended back pay without explanation. In the RIF case, the ALJ denied back pay on the ground that it could not be established that Mr. Panek's employment would have continued but for the FAA's refusal to bargain.

**5.** In the reorganization case, the FAA filed exceptions to the ALJ's recommendation that the remedy should include restoration of the *status quo ante*. The FAA subsequently withdrew those exceptions, indicating that it intended to

fully adhere to that portion of the recommended order. In the RIF case, the Authority's General Counsel and the Union excepted to the ALJ's failure to award back pay.

**6.** Because the FLRA's refusal to award back pay did not rest on an interpretation of its organic statute, but rather on its reading of the Back Pay Act—a general statute—the FLRA's interpretation is entitled to respect before this court, but we are not bound by its construction of the statute even if reasonable. *Nebraska Military Dep't v. FLRA*, 705 F.2d 945, 948 (8th Cir.1983); *Div. of Military and Naval Affairs v. FLRA*, 683 F.2d 45, 48 (2d Cir.1982), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 523, 78 L.Ed.2d 708 (1983); *New Jersey Air Nat'l Guard v. FLRA*, 677 F.2d 276, 281–82 n. 6 (3d Cir.), *cert. denied*, 459 U.S. 988, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982). We are therefore called upon to engage in a de novo interpretation of the statute, guided, of course, by Congressional intent. *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ The Union concedes, and we agree, that the "but for" step of the test is consistent with the language of the statute. Under the Back Pay Act, the only actions that provide a basis for a back pay award are those "which [have] resulted in" a loss to the affected employee. FLRA's "but for" formulation appropriately effects the causal nexus mandated by the statute itself.[7]

The FLRA, however, has gone farther than fashioning an unexceptionable test; under the guise of its "but for" step, the Authority has established a *per se* rule against the award of back pay to remedy an "impact and implementation" bargaining violation. As counsel for the FLRA candidly stated at oral argument, where the agency's improper action is failure to engage in "impact and implementation" bargaining, the adversely affected employee will *never* be able to satisfy the FLRA's "but for" test.

■ In support of its *per se* rule, the FLRA emphasizes that "impact and implementation" bargaining is procedural only, as the agency in such instances indisputably enjoys the substantive right to effect the underlying changes. The Authority then goes on to argue that "because it cannot be determined with any reasonable certainty what agreements the parties would have reached had 'impact and implementation' bargaining taken place, there is nothing in the records of these cases, and only the sheerest speculation otherwise, to substantiate that impact and implementation bargaining would have precluded the losses of pay experienced by the employees in these cases." FLRA Brief at 11–12. The FLRA's position, however, ignores first principles, including the basic purpose of collective bargaining. Legally mandated collective bargaining provides an orderly vehicle for the formal articulation of competing positions so, if successful, a more universally agreeable course of action may eventuate.[8] Congress explicitly stated in the Federal Labor Relations Act that collective bargaining "safeguards the public interest" and "contributes to the effective conduct of public business." 5 U.S.C. § 7101(a). To say that it is "sheerest speculation" to assume that bargaining might have resulted in a different solution is to say, in effect, that bargaining is a purely formalistic exercise, devoid of substance. Not surprisingly, we decline to adopt such a remarkable proposition which flies in the face of the elaborate regime of management-labor relations fashioned by the Article I branch.

The FLRA, it bears observing, has not been toiling alone in the back pay vineyards. Over the years, the judiciary has had occasion to analyze the merits of back pay requests. In our review of the not inconsiderable body of law pertaining to back pay, we find that courts have consistently recognized that an agency's procedural violation can work harm to adversely affected employees, thereby triggering a make-whole remedy (including back pay) despite the employer's substantive right to take the underlying action.[9] For example, in *Ryder v. United States*, 585 F.2d 482, 487–88, 218 Cl.Ct. 289 (1978), the old Court of Claims stated:

> Where a serious procedural curtailment mars an adverse personnel action which deprives the employee of pay, the court has regularly taken the position that the defect divests the removal (or demotion) of legality..... In that situation, the

---

7. The Comptroller General has also employed a "but for" test in applying the Back Pay Act. *E.g., In re Mare Island Naval Shipyard,* 55 Comp.Gen. 629, 633 (1976); *In re Unfair Labor Practice Make-Whole Remedies,* 54 Comp.Gen. 760, 763 (1975).

8. In these two cases, for instance, the affected employees might have been in a better position had no violation occurred, because the FAA might have agreed at the bargaining table to continue the existing work schedules, or implement the RIF in such a way that another, possibly more junior, employee would be laid off.

9. The FLRA is quite correct that these cases do not specifically cite the Back Pay Act. We cite them, however, for the broader principle that a procedural violation can give rise to a back pay award.

merits of the adverse action are wholly disregarded. (Citations omitted.)

The court thus granted the employee's request for back pay. *Id.* 585 F.2d at 489. Likewise, in *Camero v. United States*, 375 F.2d 777, 179 Cl.Ct. 520 (1967), the Court of Claims, assuming *arguendo* that the employee's discharge was proper on the merits, held that the employee could nevertheless recover back pay because of a procedural (*ex parte* communication) violation.

Even within the Executive Branch, the Merit Systems Protection Board, the FLRA's sister agency born of the same 1978 landmark legislation, has likewise followed this approach. For instance, in *Phelps v. Department of Labor*, 25 M.S. P.R. 30 (1984), the Board held that because the agency had failed to accord the employee a procedural right (to a work appraisal) prior to implementation of a RIF, the agency must reinstate the employee, with back pay. *Id.* at 32. The Board reached its conclusion despite the fact that "there [was] no assurance that [the employee] would have received [a sufficiently high] rating, and have been retained following the RIF." *Id.*[10]

The FLRA attempts to distinguish this formidable line of inter-branch authority on the ground that the procedural rights at issue were intended to benefit the individual employee directly, whereas in the case at bar, only the Union's institutional rights, as opposed to the employee's individual rights, were affected by the FAA's failure to bargain. The FLRA's effort fails. The very purpose of "impact and implementation" bargaining is to negotiate arrangements for adversely affected employees. 5 U.S.C. § 7106(b)(3). It is evident that an agency's refusal to bargain over such matters results not only in harm to the Union's institutional interests; violation of the bargain-

ing obligation has a direct, concrete impact on individual employees. In this context, it is beyond cavil that the Union is *representing* the interests of its members, not advancing the interests of the Union *qua* Union.

In our view, the insurmountable barrier to back pay recovery erected by the FLRA cannot stand. In applying its "but for" test to procedural violations, the Authority is obliged to recognize the value, fundamental in law and common sense, of procedural integrity; specifically, the Authority must allow for the fact that it is, in the nature of things, highly difficult for an adversely affected employee to establish that bargaining which never occurred (by virtue of the employer-agency's violation) would have prevented the loss of pay occasioned by the change.[11]

### III

The Union also complains that the FLRA has arbitrarily departed from a prior holding without explanation. We agree. In *United States Department of the Treasury, Internal Revenue Service, Dallas District*, 13 F.L.R.A. 459 (1983), the Authority awarded back pay to individuals adversely affected by the agency's failure to engage in "impact and implementation" bargaining. *Id.* at 460–61. In its brief in the present cases, the FLRA elected not even to try to distinguish *IRS, Dallas District*, arguing instead that "the Authority has been engaged in the process of evolving in a reasonable manner the law of make whole remedies." FLRA Brief at 20–21. This *ipse dixit* will not do. Fidelity to law requires more than mechanical incantations about the life and growth of the law.

10. We obviously have no occasion to pass on whether these cases were rightly decided. The sole purpose of setting forth examples of this line of precedent is to demonstrate the vigor of the proposition that a procedural miscue by an agency enjoying broad substantive rights can trigger the full panoply of make-whole remedies, including back pay.

11. It scarcely needs to be said that we in no wise suggest that every procedural violation ineluctably results in back pay. Far from it, the employer must be afforded the opportunity to demonstrate that the requisite causal nexus under the Back Pay Act did not exist.

■ We hasten to note our awareness of the FLRA's consistent refusal since *IRS, Dallas District,* to award back pay for violations of the right to engage in "impact and implementation" bargaining.[12] But consistent infidelity to existing precedent is no virtue. Latter-day constancy to a new rule or principle does not relieve the Authority of its obligation to distinguish or overrule its own inconsistent precedent. As this court recently reminded the Authority, " 'an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if any agency glosses over or swerves from prior precedents without discussion it may cross the line from tolerably terse to intolerably mute.' " *Local 32, AFGE v. FLRA,* 774 F.2d 498, 502 (D.C.Cir.1985) (quoting *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971)).

In the two cases at hand, the effects of the FLRA's failure adequately to set forth its governing rule are clear. With respect to the identical violation, one ALJ awarded back pay; the other did not. To add to the disarray, the FLRA's General Counsel has interpreted the FLRA's "but for" test as leading to back pay for "impact and implementation" bargaining violations. *See, e.g., FAA* (No. 68), 20 F.L.R.A. at 273–74 (General Counsel excepted to ALJ's denial of back pay). The confusion and inconsistency within the Authority itself is abundantly evident. The FLRA is therefore obliged, on remand, to provide a reasoned explanation for any rule which it chooses to fashion, including an explanation of departures from its own body of law.

## IV

We emphasize that today's holding is a limited one. We do not hold that the affected individuals in these two cases are entitled to back pay, nor do we suggest that any *per se* rule in favor of the adverse-

ly affected employees obtains under the Back Pay Act. To the contrary, we hold only that the Back Pay Act permits a back pay award to affected employees of an agency that has failed to engage in "impact and implementation" bargaining, so long as the employees meet the initial burden of establishing a causal nexus between the violation and the loss of pay. Accordingly, we grant the petitions for review and remand to the Authority for further proceedings consistent with this opinion.

*It is so ordered.*

---

12. *See, e.g., Dep't of Agric., Plant Protection and Quarantine Animal and Plant Health Inspection Serv.,* 17 F.L.R.A. 281 (1985); *Veterans Admin.*

*Hines Hosp., Hines, Ill.,* 16 F.L.R.A. 3 (1984); *Dep't of the Air Force, Air Force Sys. Command, Elec. Sys. Div.,* 14 F.L.R.A. 390 (1984).