**NATIONAL TREASURY EMPLOYEES UNION, Plaintiff,**

v.

**UNITED STATES CUSTOMS SERVICE, et al., Defendants.**

Civ. A. No. 82–2867.

United States District Court, District of Columbia.

Aug. 30, 1984.

---

Lois G. Williams, Sharyn Danch, Michael J. McAuley, National Treasury Employees Union, Washington, D.C., for plaintiff.

Charles F. Flynn, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiff National Treasury Employees Union (NTEU) brings this action under the Freedom of Information Act (FOIA), as amended, 5 U.S.C. § 552 *et seq.* (1982), to enjoin the United States Customs Service from withholding certain documents that defendants claim are exempt from disclosure under FOIA. The documents in question are known as "crediting plans"—an internal evaluation procedure developed in each of the nine regional offices of the Customs Service pursuant to Article 17, Section 7, of the negotiated National Agreement between NTEU and Customs and "designed to insure a systematic means of selection for promotion according to merit." 5 C.F.R. § 335.102 (1982). Presently, the Court is considering the renewed motion of plaintiff to compel preparation of a *Vaughn* Index and the cross motions of the parties for summary judgment. For the reasons set forth below, the Court will deny the renewed *Vaughn* motion of plaintiff and grant the motion of defendant for summary judgment as there are no material issues of fact in dispute and defendants are entitled to judgment as a matter of law.

## BACKGROUND

Plaintiff filed its FOIA requests by letters dated April 20, 1982, with the Regional Commissioners of all nine regions of the Customs Service. In each request, plaintiff sought the crediting plans used by the regional office for the following seven positions: 1) Senior Inspector, GS–1899–11; 2) Import Specialist Team Leader, GS–1889–12; 3) Customs Patrol Officer, GS–1884–9; 4) Entry Level Customs Inspector, GS–1899–5; 5) Entry Level Import Specialist, GS–1889–5; 6) Entry Level Customs Patrol Officer, GS–1884–5; and 7) Customs Warehouse Officer, GS–1845–4/5/6. When plaintiff did not receive either a response or partial or complete denial of its FOIA requests from the regions, it timely filed an administrative appeal with the Office of Regulations and Rulings of the Customs Service by letter dated June 8, 1982. On November 10, 1982, Customs issued its final decision releasing in part the forty-four crediting plans responsive to plaintiff's FOIA requests. Customs determined that the information withheld or subject to excision was properly exempt from release under FOIA exemptions (b)(2) and (b)(5).

Thereafter, plaintiff filed this suit contesting the agency's claimed exemptions and petitioning the Court for an order compelling defendants to prepare a *Vaughn* Index. On October 27, 1982, the Court denied plaintiff's *Vaughn* motion without prejudice. Plaintiff filed a second motion to compel the preparation of a *Vaughn* Index on December 3, 1982, after which the parties agreed that the crediting plans from Customs' Houston Region would be representative of all crediting plans in dispute for the limited purposes of resolving plaintiff's second *Vaughn* motion. Defendants submitted the affidavits of William R. Irvin, Assistant Director, Staffing, Office of Personnel Management (OPM) and B. James Fritz, Director, Disclosure Law Division, Office of Regulations and Rulings, United States Customs Service, in

response to plaintiff's second *Vaughn* motion. Plaintiff, however, filed a renewed *Vaughn* motion on January 11, 1983, on the grounds that the Irvin and Fritz affidavits were insufficient.[1] After opposing plaintiff's renewed motion, defendants filed a motion for summary judgment contending that no material issue of fact remains in dispute and that the requested information in the crediting plans is exempt from release under FOIA exemption (b)(2). Plaintiff, in turn, filed its cross motion for summary judgment.

## DISCUSSION

### I. Plaintiff's Renewed *Vaughn* Motion

Plaintiff, in its renewed motion for preparation of a *Vaughn* Index, argues that the affidavits of Irvin and Fritz are insufficient in three respects. First, plaintiff contends that the affidavits contain inadequate detailed justification of defendants' claimed exemption. Second, plaintiff maintains that neither affiant attempts to correlate the claimed exemption with specific portions of the requested crediting plans. Third, plaintiff asserts that "the factual nature of the withheld materials remains shrouded in mystery." In sum, plaintiff contends that the Irvin and Fritz affidavits are insufficiently detailed to satisfy the standards of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

■ It is firmly established in this Circuit that agency affidavits in support of a FOIA exemption must "describe the documents and justifications for non-disclosure with reasonably specific detail...." to comply with the requirements set forth in *Vaughn v. Rosen. Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). *See also Hayden v. National Security Agency/Central Security Service*, 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied*, 466 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Mead Data Central, Inc. v. U.S. Department of Air Force*, 566

F.2d 242, 251 (D.C.Cir.1977). The reason for this rule of "reasonable specificity" is to ensure that an agency's allegations of exempt status are both adequately justified and sufficiently detailed so that a plaintiff can "argue effectively against the [agency's] exemption claims." *See e.g., Mead*, 566 F.2d at 251.

■ The affidavits of Irvin and Fritz contain a detailed justification of the reasons why defendants believe Exemption (b)(2) proscribes disclosure of the crediting plans. Irvin's affidavit describes the withheld information as "non-verifiable portions of a crediting plan" which are designed to assess an applicant's skills rather than his verifiable educational or occupational attainments. According to Irvin, this non-verifiable information consists of, *inter alia*, tailored questions and their corresponding ratings. Moreover, Irvin's affidavit sets forth in sufficient detail the type of harm that defendants contend would result from the disclosure of the information, such as the creation of an unfair advantage to those applicants with advance knowledge of the questions and ratings as well as the impairment of the agency's ability to accurately evaluate such an applicant's real skills. Irvin analogizes public disclosure of the non-verifiable portions of a crediting plan to "revealing examination questions prior to a written test." Fritz's affidavit, likewise, details with reasonable specificity why the Customs Service determined that the withheld information is within the purview of Exemption (b)(2). He describes the two types of information withheld as "qualifying language used in each criteria to evaluate the experience claimed by each candidate according to the manner of performance" and "examples of experience under each criteria which the agency has determined qualifies for the various grade levels used in evaluating the candidates' responses to the KSAO's [knowledge, skills, abilities, and other candidate characteristics] listed in the job vacancy announcements." Fritz also states that pub-

1. Although it appears plaintiff desired to withdraw its renewed *Vaughn* motion, the Court will

nonetheless resolve this motion since it was never formally withdrawn by plaintiff.

lic disclosure of these documents would undermine the validity and fairness of the Service's evaluation · process inasmuch as those candidates who obtained the information could "parrot" the qualifying language contained in the higher grade levels of the crediting plans.

■ The Court is also unpersuaded by plaintiff's claim that defendants' affidavits fail to correlate the claimed exemptions with specific portions of the unreleased documents as required by *Vaughn*. In *Vaughn*, the Civil Service Commission claimed that certain documents were exempt in their entirety under three distinct exemptions. The Court, after stating that the *Vaughn* case "dramatically illustrated" the need for an itemization and indexing system, explained the rationale for this requirement:

> From the record, we do not and cannot know whether a particular portion is, for example, allegedly exempt because it constitutes an unwarranted invasion of a person's privacy or because it is related solely to the internal rules and practices of an agency. While it is not impossible, it seems highly unlikely that a particular element of the information sought would be exempt under both exemptions. Even if isolated portions of the document are exempt under more than one exemption, it is preposterous to contend that all of the information is equally exempt under all of the alleged exemptions. It seems probable that some portions may fit under one exemption, while other segments fall under another, while still other segments are not exempt at all and should be disclosed. The itemization and indexing that we herein require should reflect this.

484 F.2d at 827–28. This case does not present the type of anomaly which existed in *Vaughn*. All of the documents withheld by defendants are allegedly exempt from disclosure under one FOIA exemption, Exemption (b)(2), thereby nullifying the need to formulate the type of itemization and correlation system required by the Court of Appeals in *Vaughn*. For these reasons,

the Court finds the affidavits of Irvin and Fritz sufficient to satisfy the standards of *Vaughn*.

II. Documents Were Properly Withheld Under Exemption (b)(2), 5 U.S.C. § 552(b)(2)

■ Exemption (b)(2) covers materials "related solely to the internal personnel rules and practices of [an] agency." 5 U.S.C. § 552(b)(2). To determine whether documents fall within Exemption (b)(2), the Court must determine whether the withheld information relates to "routine matters" of "merely internal significance" in which there is no substantial or legitimate public interest. *See Lesar v. U.S. Department of Justice*, 636 F.2d 472, 485 (D.C.Cir. 1980). The D.C. Circuit Court, in *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051 (D.C.Cir.1981) (*en banc*), devised a two-prong test to evaluate the applicability of this exemption. The Court noted:

> [I]f a document for which disclosure is sought meets the test of 'predominant internality,' and if disclosure significantly risks circumvention of agency regulations or statutes, then Exemption 2 exempts the material from mandatory disclosure.

670 F.2d at 1074.

■ Defendants argue that the affidavits of Irvin and Fritz adequately demonstrate that the withheld crediting plans are internal documents whose disclosure will risk circumvention of subchapter S6–1 of the Federal Personnel Manual (FPM) Supplement 335–1 (August 20, 1982). Plaintiff maintains, however, that both affidavits are insufficient to satisfy the agency's burden of proof under FOIA Exemption (b)(2). Although the Court has determined that these affidavits are sufficient to withstand plaintiff's renewed *Vaughn* motion, it must nonetheless consider their adequacy for summary judgment purposes. Summary judgment for the Government is warranted if "the description in the affidavits demonstrates that the information logically falls within the claimed exemption and if the information is neither controverted by the

evidence in record nor by evidence of agency bad faith." *Baez v. United States Department of Justice*, 647 F.2d 1328, 1335 (D.C.Cir.1980). It is the finding of the Court that the affidavits of Irvin and Fritz adequately indicate a logical nexus between the withheld portions of the crediting plans and the agency's claimed exemption under section 552(b)(2) of FOIA.

Plaintiff first contends that the withheld sections of the crediting plans are not predominantly internal documents by virtue of the public's interest in monitoring the Government's compliance with its own merit promotion process and enforcement of export-import laws. The affidavits of Fritz and Irvin substantiate the contrary, however. Fritz's affidavit is illustrative. He states that the withheld information is developed in each of the nine regional offices as an "internal evaluation procedure used by agency personnel in the agency's internal promotion and placement program." In addition, regulation subchapter S6–1 restricts the disclosure of such evaluating procedures to agency personnel responsible for internal promotion and placement. The Court is satisfied that the subject crediting plans are "not concerned with regulating the behavior of the public, but consist solely of instructions to agency personnel." *Crooker*, 670 F.2d at 1075. Thus, the Court finds that the excised portions of the crediting plans are predominantly internal to the agency's merit promotion process.

The second part of the *Crooker* test requires that "disclosure significantly risks circumvention of agency regulations or statutes." Defendants maintain that release of the excised information in the crediting plans responsive to plaintiff's FOIA requests would circumvent subchapter S6–1 of the FPM as well as the mandate of 5 U.S.C. § 2302(c) to comply with and enforce applicable civil service laws, rules, and regulations. In fact, Irvin states in his

affidavit that OPM advised the Customs Service that certain portions of its crediting plans should not be released because, in OPM's considered opinion, public disclosure of these portions would give an unfair advantage to certain candidates and compromise the utility of the plan. In contrast, NTEU asserts that unlike the present case, those cases holding Exemption (b)(2) applicable uniformly find that the release of the withheld documents would hinder law enforcement investigations, enable violators to evade the law, or possibly jeopardize the safety of agency personnel. While it is true that several courts have determined that law enforcement materials are exempt under § 552(b)(2), none of these courts held that the only circumvention contemplated by this exemption is the hindrance of a law enforcement agency's investigatory activities. *See e.g., Lesar*, 636 F.2d 472 (D.C.Cir. 1980); *Hardy v. Bureau of Alcohol, Tobacco and Firearms*, 631 F.2d 653 (9th Cir. 1980). Such a rule would effectively preclude the application of Exemption (b)(2) by non-law enforcement agencies; a result apparently not intended by Congress. *See e.g.*, S.Rep. No. 813, 89th Cong., 1st Sess. 8 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10, *reprinted in*, U.S.Code Cong. & Ad.News 2418, 2427 (1966).

■ Plaintiff also argues that the Federal Labor Relations Authority (FLRA) recently determined in *National Treasury Employees Union and NTEU Chapter 153,161, and 183 and U.S. Customs Service, Region II*, 11 FLRA No. 47 (February 3, 1983) and *National Treasury Employees Union and Department of the Treasury, U.S. Customs Service, Washington, D.C.*, 11 FLRA No. 52 (February 3, 1983), that the FPM does not preclude the disclosure of the crediting plans.[2] Thus, plaintiff maintains that disclosure of the plans in this case will not circumvent subchapter S6–1. Subchapter S6–1 requires Customs

---

**2.** The Second Circuit in U.S. Customs Service Region II v. Federal Labor Relations Authority, No. 83–40565 (2d Cir. July 20, 1984) reversed the decision of FLRA in National Treasury Employees Union and NTEU Chapters 153, 161, and 183 and U.S. Customs Service, Region II, 11

FLRA No. 47 (February 3, 1983). The Court of Appeals determined that the Customs Service is not required by law to negotiate and disclose the contents of its crediting plans for the positions of Import Specialist GS 5/7 and Customs Inspector GS 9/11.

personnel responsible for the agency's personnel measurement program to identify, *inter alia,* crediting plans which require security and control since disclosure of this material to "unauthorized persons, might provide unfair advantage to some candidates or otherwise compromise the utility of the selection procedure." This regulation also explicitly states that such material "must not be exposed to any persons, including management officials, members of employee organizations or non-Federal personnel who do not have an official need to see the material." Examples of security and control materials include aspects of procedures for evaluating the past behavior of candidates; i.e., examples of behavior used as criteria for the rating of information about experience if a candidate's responses are not readily verifiable. It is important to note that FLRA, when determining whether to disclose the crediting plans in the cases cited by plaintiff, limited its holding to those plans involved in the specific case as opposed to all crediting plans of the Customs Service. FLRA's holding in these cases appears to be consistent with the objective of subchapter S6–1 to prohibit disclosure only of those crediting plans, or parts thereof, which "might provide unfair advantage to some candidates or otherwise compromise the utility of the section procedure." Nevertheless, contrary to plaintiff's assertion this Court is not obliged to give any special deference to FLRA's construction of the FPM since it is not the agency primarily responsible for administering and enforcing civil service rules and regulations. *See e.g., California National Guard v. Federal Labor Relations Authority,* 697 F.2d 874, 879 (9th Cir.1983). *See also* 5 U.S.C. § 7105(a)(1). Moreover, in *National Treasury Employees Union v. Devine,* Docket No. HQ120500006 (1981), NTEU attacked the validity of subchapter 6 and the implementation of Customs of this regulation under the crediting plans that are presently in dispute. The Merit Systems Protection Board found that the regulation "is rationally related to the purpose of preventing unfair advantage to any competing applicant or employee" and "is not being invalidly implemented by the Customs Service." *Id.* at 2, 7–8. Likewise, it is sufficiently clear to this Court that disclosure of this information will circumvent this regulation.

■ The public interest in disclosure must also be weighed. *Lesar,* 636 F.2d at 485. The Court is of the view that public disclosure of the excised portions of Customs crediting plans would compromise the public's interest in merit-based promotions and in preventing unfair advantages to any one group. Plaintiff's contention that it needs the withheld information to process promotion grievances of its members and to fulfill its statutory duty of representation is not persuasive. It appears that the FLRA is the proper forum to determine this claim, which is essentially an allegation that Customs is engaging in an unfair labor practice by failing to provide NTEU with information necessary to perform its representational duties. *See* 5 U.S.C. § 7114(b)(4) and § 7118. Indeed, NTEU availed itself of this right in four unfair labor practice cases before FLRA challenging the non-release of the same information involved in this suit. *See United States Customs Service and NTEU,* Case Nos. 43–CA–698, 9–CA–993, 9–CA–842, 9–CA–20323. The Court is convinced that complete disclosure of documents containing controlled information under subchapter S6–1 is not in the public interest. Therefore, the Court finds that the subject crediting plans were properly withheld in full or in part under Exemption (b)(2) of FOIA.

An Order consistent with this Opinion will be entered on this date.